[L.A. No. 30527. In Bank. Mar. 8, 1976.]

PURITAN LEASING COMPANY, Plaintiff and Appellant, v.
ROBERT ALAN AUGUST et al., Defendants and Respondents.

452

**COUNSEL**

Cavalletto, Webster, Mullen & McCaughey and C. Richard Whiston for Plaintiff and Appellant.

William A. Wittman, Jr., for Defendants and Respondents.

**OPINION**

**RICHARDSON, J.**—Plaintiff appeals from a judgment of the Superior Court of Santa Barbara County entered after the jury returned a directed verdict for plaintiff and against defendants Robert Alan August, Bruce A. Brown and Patricia L. Brown. The appeal is taken by way of a settled statement pursuant to rules 7 and 127 of California Rules of Court.

The sole issue raised is the validity of a provision in a personal property lease permitting resale of the leased chattel, and immediate recovery from lessee of any deficiency in the rent reserved, upon lessee's

default. We conclude that the judgment of the trial court must be reversed and the cause remanded for further proceedings.

In August 1972, plaintiff, as lessor, and defendant August, as lessee, entered into two written lease agreements ("master" and "supplemental") of a substantial quantity of restaurant kitchen equipment. The lease instruments may be considered together, and are hereinafter simply referred to as "the lease." The equipment was purchased by plaintiff, from vendors selected by August, and specifically for his use. Codefendants Bruce and Patricia Brown guaranteed August's performance of his obligations under the lease.

The lease was for a term of eight years. Rental for the first 60 months was specified at the rate of $306 per month, and during the balance of the lease an annual rental of $615 was provided. After making six monthly rental payments defendant defaulted. The landlord of the premises in which defendant August's restaurant business was conducted informed plaintiff that defendant August was also in default in his rental payments for the premises, and that the landlord intended to relet the building. Further, the landlord threatened to remove the restaurant equipment and store it at plaintiff's expense, unless before May 10, 1973, it was taken from the premises by plaintiff or re-leased in place. Approximately May 18, 1973, the landlord notified plaintiff that the premises had been re-leased and August's tenancy terminated.

Shortly thereafter plaintiff received a letter from the Browns' attorney which indicated that defendants' attempts to relet the personal property to the new tenants of the restaurant had been unsuccessful. The letter further suggested that, since plaintiff had previously indicated its intention to conduct a public sale of the leased chattel in consequence of the default, plaintiff should immediately proceed to do so, thus preventing wear and tear by the new tenants. Plaintiff thereupon repossessed the equipment, and about 10 days after receipt of this letter, and after publication of appropriate notices, sold the items in question at public auction for $4,250. In pursuing this course, plaintiff relied upon the following lease provision: "Upon the occurrence of any such default, Leasing Company at its sole option may elect that the rental payments due hereunder be accelerated and the entire amount of rental be due immediately; or Leasing Company may terminate this lease; *or, Leasing Company may enter upon Lessee's premises and without any court order or other process of law may repossess and remove said Property either with or without notice to Lessee. Any such repossession shall not constitute a*

*termination of this lease unless Leasing Company so notifies Lessee in writing, and Leasing Company shall have the right,* at its option, to lease the Property to any other person or persons upon such terms and conditions as Leasing Company shall determine; or *to sell the Property to the highest bidder at public or private sale at which sale Leasing Company may be the purchaser.* In either of such events, there shall be due from Lessee *and Lessee will immediately pay to Leasing Company the difference between the total amount of* rentals to be received from any third person or *the purchase price at said sale,* as the case may be, *and the total unpaid rental provided to be paid herein,* plus all costs and expenses of Leasing Company in repossessing, releasing, transporting, repairing, selling or otherwise handling the Property." (Italics added.)

Following sale, plaintiff commenced this action, claiming it is entitled, under the terms of the lease, to recover from defendants the total rent reserved in the lease plus expenses incurred in conducting the public auction, less the aggregate of the amount obtained by selling the equipment, the rent already paid, a security deposit previously made by defendants, and a discount for the present value of future installments of rent. Plaintiff calculates the total amount due under this formula as $10,901.50, plus interest at 8 percent per annum from and after June 26, 1973 (the date of sale), plus reasonable attorneys' fees in the amount of $3,000.

After a jury trial, the superior court directed a verdict for plaintiff in the amount of $761.07. The settled statement indicates that the directed verdict was based on the court's conclusion that the lease provisions under which plaintiff sought to proceed were unenforceable. The court thus awarded only the amount of unpaid rent *up to* the date of sale, plus insurance premiums and property taxes paid by plaintiff, less the security deposit. Defendants were not credited with the proceeds of sale, and plaintiff was not permitted to recover for rent loss accruing after the date of sale. Defendants were deemed to be the prevailing parties and were therefore awarded costs and attorneys' fees.

The questions presented are: (1) was the provision at issue here, permitting repossession, resale, and subsequent recovery of deficiencies based upon the total rent reserved, valid and enforceable; and (2) even if the answer to question (1) is "yes," has plaintiff sued prematurely?

## I. *Validity of the Lease Provision*

■ Defendants first argue that the lease provision under which plaintiff here proceeds is an invalid attempt to provide for liquidated damages. We do not agree.

We begin our consideration of the issue by noting the existence of two sections of the Civil Code. Section 1670 generally invalidates contractual provisions which purport to determine in advance the amount of damages or compensation for breach of the obligations created by the contract. Section 1671 permits such liquidated damages where ascertainment of actual damages upon breach of the contract would either be impractical or extremely difficult. There exists substantial authority to the effect that simple "acceleration clauses" in leases, which permit the lessor to hold the lessee immediately liable for all rent reserved upon default in payment of one installment, are invalid under the liquidated damages statute. (E.g., *Ricker* v. *Rombough* (1953) 120 Cal.App.2d Supp. 912, 919 [261 P.2d 328]; *Electrical Prod. Corp.* v. *Williams* (1953) 117 Cal.App.2d Supp. 813 [256 P.2d 403]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 414, p. 347; see *Vincent* v. *Grayson* (1973) 30 Cal.App.3d 899 [106 Cal.Rptr. 733]; but see *Associates Discount Corp.* v. *Tobb Co.* (1966) 241 Cal.App.2d 541, 549-550 [50 Cal.Rptr. 738]; cf. Civ. Code, § 1951.5, providing that §§ 1670, 1671 apply to a lease of real property.)

It will be observed, however, that plaintiff here does not rely upon such a clause (though one is provided in the lease), but upon an alternative provision permitting the lessor to repossess upon lessee's default, and to relet *or resell*, "[without] . . . termination of this lease . . . ." Under this latter clause defendants may be held liable only for the excess of the rent reserved over any amounts actually procured from the reletting or resale.

Defendants concede that clauses expressly permitting a lessor to repossess and relet for the lessee's account, while holding the lessee for any deficiency in the total rent reserved, have long been held valid in California. (E.g., *Lawrence Barker, Inc.* v. *Briggs* (1952) 39 Cal.2d 654, 664-665 [248 P.2d 897]; *Yates* v. *Reid* (1950) 36 Cal.2d 383 [224 P.2d 8]; *Narcisi* v. *Reed* (1951) 107 Cal.App.2d 586 [237 P.2d 558]; *Burke* v. *Norton* (1919) 42 Cal.App. 705 [184 P. 45].) We are aware of no previous cases, and defendants cite none, in which the incompatibility of such clauses with sections 1670 and 1671 has been raised.

Whether or not the holdings of *Ricker* and *Electrical Products* are sound (and we express no opinion thereon), they are not applicable to the clause at issue. The clause in question does not purport to fix damages "in anticipation thereof," but provides only that lessee's default, and lessor's consequent repossession to relet or sell, terminates neither lessee's obligation to pay the rent lessee *agreed at the outset* to pay, nor lessor's right to recover the *actual amount* of his loss arising from the repudiation. It provides that lessee will be credited with any mitigation lessor is able to achieve; recovery is permitted only after the exact amount of lessor's loss has been ascertained.

This being the case, we discern no reason to extend the long-standing "liquidated damages" provisions of the Civil Code to invalidate a lease provision of a type which has been accorded legal sanction in this state. We therefore hold that the lease provision at issue is not an invalid attempt to fix liquidated damages.

 Defendants argue further, however, that regardless of the express language of the lease, *sale* by the lessor of the leased property cannot but terminate the lease and, with it, lessee's continuing obligation to pay rent. It is suggested that to permit lessor to collect rent while withholding the leased chattel is both unjust and contrary to the authorities. Again, we cannot accept defendants' contention.

 Traditionally, where a lessee abandons leased property, or otherwise indicates an intent wholly to repudiate a lease, the lessor may, even in the absence of express agreement, choose among three courses of action: He may (1) accept the lessee's surrender of his leasehold interest, thereby terminating further obligations of either party under the lease; (2) rest upon the lease and sue for each installment of rent as it becomes due; or (3) upon notice to lessee, re-enter or repossess the property, relet it for the lessee's account, and sue in damages to recover the excess of the total rent reserved over any amounts realized by the reletting. (*De Hart v. Allen* (1945) 26 Cal.2d 829, 832 [161 P.2d 453]; *B.K.K. Co. v. Schultz* (1970) 7 Cal.App.3d 786, 790 [86 Cal.Rptr. 760]; *Phillips-Hollman, Inc. v. Peerless Stages, Inc.* (1930) 210 Cal. 253, 258 [291 P. 178]; *Dickinson v. Electric Corp.* (1935) 10 Cal.App.2d 207, 210 [51 P.2d 205]; see generally, 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 515, pp. 2186-2187.)

Though the cases have primarily involved leases of real property, we discern no policy reason preventing the principles expressed therein

from applying equally to leases of personalty. (We note the significant changes from prior decisional law enacted by the Legislature in 1970 and codified as section 1951 et seq. of the Civ. Code. These sections apply *only* to leases of *real property,* however, and the prior law remains in effect insofar as related to personalty.)

In the case before us an *express agreement* of the parties provided that plaintiff might proceed as he has done. Plaintiff's resort to its contractual remedy, accordingly, should be upheld in the absence of some policy consideration invalidating it. These factors render unpersuasive defendants' principal reliance upon the case of *Automobile etc. Co.* v. *Salladay* (1921) 55 Cal.App. 219 [203 P. 163]. There, the Court of Appeal, in holding that lessors of an automobile could not recover rent for periods after they had repossessed the car for lessee's default in the obligation to pay rent, declared only that such recovery was improper *"at least in the absence of an express covenant to the contrary."* (Italics added.)

Similarly, *Challenge-Cook Bros., Inc.* v. *Lantz* (1967) 256 Cal.App.2d 536 [64 Cal.Rptr. 239], affords little comfort to defendants. To be sure, the Court of Appeal there suggested that a lessor may not recover damages for loss of rent under a lease of personalty, which rent is attributable to periods after the lessor has sold the repossessed chattel, since, after sale, lessor is no longer "ready, able and willing to perform" his obligations under the lease. (*Id.,* at p. 547.) However, the court's language is but dicta, since lessors there sought to recover only for periods prior to the sale. (In fact, lessors had held the repossessed chattel for a protracted period, finally selling it only a few months prior to natural expiration of the term.)

In any event, the weight of applicable authority on the point is to the contrary. In *Yates* v. *Reid, supra,* 36 Cal.2d 383, we were concerned with several applicable considerations. In *Yates,* lessors rented a tourist resort to lessees under a lease providing, inter alia, that: " 'Should any of the rent reserved be due and unpaid, . . . or should the lessee vacate or abandon said property, . . . the Lessor may, at its option, and without demand or notice of any kind whatsoever, re-enter and take possession of said property . . .' " in which event " '. . . Lessor may, at his option, either terminate this lease and recover from the Lessee all damages caused by the breach . . . or, said Lessor may relet said property or any part thereof, . . . No re-entry of said property by the Lessor, as herein provided, shall be construed as an election on his part to terminate this

lease, unless written notice to that effect is delivered to the Lessee. . . .' " When lessee ceased paying rent and vacated the premises prior to expiration of the term, lessor went into possession and operated the resort himself for nearly a year before reletting it, without contacting lessee. When the premises were finally relet, Lessor notified lessee that he was demanding the difference between the monthly rental achieved by the reletting and the rental originally agreed to by lessee. A month or so later, lessor again contacted lessee, declaring that the lease was terminated and again demanding the deficiency.

In holding that lessor was entitled to recover damages based upon his loss of rent under the lease over the entire term thereof, we rejected arguments of the lessee that the lessor's actions were inconsistent with the lessee's rights and therefore worked a surrender of the lease by operation of law, regardless of its express terms. We said: "In the present case the retaking of possession by the plaintiff as landlord and his reletting of the premises were entirely consistent with the rights of the tenants under the lease. The plaintiff did no more than exercise the rights accorded to him. His conduct did not result in a surrender of the lease by operation of law. The provision in the lease was valid and controlling. [Citing several cases.] . . . ." (*Id.,* at p. 385.) Further, we held that: "It is immaterial that the plaintiff reentered and relet *for his own account.* The terms of the lease gave him the right to do so if he so desired. . . ." (*Id.,* at p. 386, italics added.)

Similarly, in *Lawrence Barker, Inc.* v. *Briggs, supra,* 39 Cal.2d 654, 664-665, an express lease clause permitted the lessor, on default, to re-enter and relet as the lessee's agent "or otherwise," without termination of the lease. The lease provided further that, upon default by lessee, lessor could sell certain stocks of lessee deposited with lessor as security for the performance of lessee's obligations. We held that, upon lessee's default, lessor could maintain an action in ejectment while retaining the securities, over objections of lessee that lessor's recovery of possession worked a forfeiture of the lease. In so doing, we adopted the holding of *Grommes* v. *St. Paul Trust Co.* (1893) 147 Ill. 634 [35 N.E. 820, 822], as quoted in *Burke* v. *Norton* (1919) 42 Cal.App. 705, 709 [184 P. 45]: " 'There is nothing illegal or improper in an agreement that the obligation of the tenant to pay all the rent to the end of the term shall remain, notwithstanding there has been a re-entry for default; and if the parties choose to make such an agreement, we see no reason why it should not be held valid as against both the tenant and his sureties.' "

We perceive neither conceptual nor practical difficulty in applying the rationale of *Yates* and *Lawrence Barker, Inc.* to the clause at issue here, which gave the lessor the additional option of *sale* of the leased chattel. Lessee is thereby no more deprived of its use than he would be in a case of reletting, or of lessor's operation for his own account, as was the case in *Yates.* Whether the theory of lessor's recovery is damages for *breach* of the lease on the one hand (see discussion, *ante*), or simply that lessor is proceeding upon the lease under a right expressly accorded him therein, on the other, the result is the same.

In this connection, we note that California statutes applicable to both real and personal property provide, in particular circumstances, for recovery calculated upon the entire lease term *despite termination of the lease* for lessee's default. Civil Code section 1951.2 provides that where a lessee of real property breaches and abandons prior to expiration of the term, or the lessor terminates lessee's possession for breach, the lease *terminates. Nonetheless,* if the lease provides for such a remedy, or if the lessor has relet the property in good faith, the lessor may recover the worth at the time of award of the total rent reserved over the remainder of the term, less any such rental loss the lessee proves could reasonably have been avoided. Civil Code section 3308 (applicable only to personal property leases since 1971) similarly allows the lessor, where expressly permitted by the lease, to recover, upon his *termination* of the lease for lessee's default, the value at termination of the excess of the total rent reserved for the remainder of the lease term (or any shorter period) over the then reasonable rental value of the property over the same period. While the lessor's election after default to proceed under section 3308 thereafter precludes all other remedies, the section is, at the outset, expressly cumulative to *all other* rights and remedies of the lessor (whether given by law *or by the lease itself*) for lessee's breach.

Moreover, practical considerations support the enforceability of the clause at issue here. The settled statement indicates that the restaurant equipment here leased was purchased from vendors selected by the lessee, and the parties appear to concede that it was substantially and permanently installed on the premises rented by lessee. Equipment of this nature depreciates with use, is subject to heavy wear and tear, and has a relatively short useful life. Under these circumstances, as the settled statement itself demonstrates, attempts to re-lease the equipment may well be unsuccessful.

In the absence of a clause permitting sale, plaintiff here would have been faced with the necessity of removing the equipment from defendants' premises and storing it until expiration of the term, and then suing the lessee for the *full* rent reserved, plus expenses of removal and storage, without deduction for amounts received in mitigation. This result would not only be economically wasteful, but would work to the disadvantage of both lessor and lessee.

Nor is plaintiff unjustly enriched by the remedy invoked here; he does not thereby obtain both the property and the rent. To the extent plaintiff disposes of the property, or obtains value for its use, plaintiff must credit appropriately such sums received against the amounts due from defendants.

Defendants assert no convincing reasons of public policy why the provision at issue should not be upheld. They do not argue that the lease was a contract of adhesion, or that their assent to its terms was achieved by fraud or duress.

Defendants do contend that to uphold the resale clause will unfairly penalize innocent guarantors in favor of a commercial lessor who chose the form of the transaction and should be bound by the law applicable to that particular form. Of course, we have concluded that the "law applicable" is not as defendants would have it. More fundamentally, however, defendants fail to show how they are thereby "penalized."

We note that the modern chattel leasing transaction is a valuable commercial financing device, generally affording important advantages to lessee as well as lessor. Moreover, the record in this case suggests that the equipment at issue here was selected by the lessee, installed to his specifications, and leased to him for its full anticipated useful life. (A very sharply reduced rental for the final three years of the eight-year term is provided, and the parties' comments at oral argument suggest that only a nominal "salvage value" would be expected to remain at the end of the term.) This lease therefore appears to have served a commercial function closely analogous to such other common financing methods as conditional sales and chattel mortgages. The latter instruments as "security interests" covered by division 9 of the California Uniform Commercial Code, do permit repossession and resale of the security and recovery of any deficiency. (Cal. U. Com. Code, §§ 9102, subd. (2); 9503; 9504, subd. (2); see *Kreisa v. Stoddard* (1954) 127 Cal.App.2d 627 [274 P.2d 164].) It has been suggested that a lease for the

entire useful life of a chattel constitutes a "lease intended as a security device" under California Uniform Commercial Code section 1201, subdivision (37), and is itself therefore a "security interest" giving rise to the remedies provided in division 9. (3 Cal. Commercial Law (Cont. Ed. Bar 1966) §§ 1.5, 6.38, 9.52, pp. 6, 304, 482.) Under these circumstances, we fail to discern how application of the resale-and-deficiency clause in this lease is unfair to the defendants.

Were we to decide as defendants would have us do in this case, the results would be manifestly inequitable. Defendants would have been permitted to repudiate a lease with impunity. Plaintiff would be left to recover what it could at a disadvantage and to absorb a substantial loss. Under the circumstances, we see no policy reason to foreclose to plaintiff a commercially reasonable remedy expressly agreed to by defendants in an arms-length transaction. We hold accordingly that, in selling the restaurant equipment, plaintiff validly exercised its rights under the lease in question, and that recovery of the deficiency based upon the total rent reserved was permissible.

## II. *Timeliness of Suit*

■ The lease at issue here provides that, upon lessor's reletting or sale of the leased equipment, lessee shall "immediately" pay to lessor the total amount of the excess of the total rent reserved (plus expenses of reletting or sale) over the proceeds of such reletting or sale. Accordingly, plaintiff, having completed its disposition of the equipment, now sues for the entire deficiency, though the lease term will not expire naturally until 1980. We hold that plaintiff may properly do so.

Traditionally, a lessor who seeks to recover rent or damages from a defaulting lessee has been forced to wait until the end of the lease term (where damages for breach are sought), or until a particular installment of rent has actually accrued (where rent is sought). (E.g., *Treff* v. *Gulko* (1932) 214 Cal. 591, 593 [7 P.2d 697]; *Phillips-Hollman, Inc.* v. *Peerless Stages, Inc., supra,* 210 Cal. 253, 258; 3 Witkin, Summary of Cal. Law, *supra,* Real Property, §§ 515-516, pp. 2186-2187; but see Civ. Code, §§ 1951.2, 3308, *supra.*) The rationale of these decisions has been that only at the expiration of the term, or after an installment of rent has accrued, can the actual amount due be precisely ascertained. (3 Witkin, *supra.*)

The reasoning behind the rule is not disturbed by permitting suit in the matter before us. Where, as here, a final *sale* of the property has

already occurred at the time suit is brought, nothing further can or need be done to ascertain the precise amount of loss sustained by the lessor. At that time, the total amounts of unpaid rent and of the proceeds and expenses of the sale are all known, and are not subject to subsequent change or adjustment. Under such circumstances no observable purpose is served by requiring the lessor to resort to periodic suits for rent. Nor should he be forced to wait another five years to sue for the entire deficiency, risking possible further deterioration not only of the equipment but in the financial condition of defendant August, as well as that of his guarantors in the interim. (See *Lawrence Barker, Inc.* v. *Briggs, supra,* 39 Cal.2d 654, 664.) In so holding, we express no opinion on whether that portion of this particular lease calling for "immediate" payment of any deficiency upon *reletting* of the leased chattel is valid and enforceable.

III. *Other Contentions*

Defendants refer to certain other issues which they suggest were not reached at trial. The first of these is whether the Browns' guaranty was supported by consideration. We think the issue of the guarantors' liability was necessarily resolved by the directed verdict against all defendants. If the Browns were dissatisfied with this result they should have appealed the directed verdict. Under rule 3(c), California Rules of Court, they could have delayed a determination of whether to file a cross-appeal until they ascertained whether plaintiff, in reality the losing party in the trial court, would file a direct appeal. Not having filed such a cross-appeal, they may not raise this issue on retrial.

Further, we think any ambiguity in the lease provision at issue has (except as indicated below) necessarily been resolved by our holding herein that plaintiff proceeded properly under its terms. On the other hand, since the trial court believed plaintiff could not recover *any* deficiency for the period after resale of the leased chattel, we may reasonably infer that matters touching upon the correct computation of the deficiency actually owed to plaintiff for that period were not reached. Such issues would, defendants suggest, include plaintiff's compliance with the California Uniform Commercial Code in conducting the sale. We do not foreclose retrial of these latter questions.

The judgment is reversed and the cause remanded for proceedings consistent with the views expressed herein.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

Respondents' petition for a rehearing was denied April 7, 1976.