[Civ. No. 38384. First Dist., Div. Four. Nov. 29, 1976.]

TRIPLE C. LEASING, INC., Plaintiff and Respondent, v.
ALL-AMERICAN MOBILE WASH et al., Defendants and Appellants.

**COUNSEL**

Miller, Perrin, Domino, Giacalone & Ackerman and Ernest L. Miller for Defendants and Appellants.

Hawkins, Gardiner, Childers & Petersen and George S. Petersen for Plaintiff and Respondent.

**OPINION**

**CHRISTIAN, J.**—This appeal turns on the question whether a transaction between appellants All-American Mobile Wash, et al. and respondent Triple C. Leasing, Inc. was a true chattel lease, as found by the trial court, or a security transaction governed by the Uniform Commercial Code, as contended by appellants.

Respondent obtained from Equipment Sales and Service (hereinafter "ESS") a van containing apparatus for washing large trucks. The price of the van was $10,400. Documents were executed whereby respondent

purportedly leased the equipment to appellants for the sum of $15,033.20 to be paid over a period of 60 months. Although the lease did not contain any provision for an option to purchase the mobile van, respondent informed appellants by letter that at the end of the 60 months appellants would be entitled to return the equipment to respondent, continue a lease of the equipment at the rate of 1 percent of the original cost of the equipment per month, or purchase the equipment for 10 percent of the original cost ($1,040). The printed lease form contained a recital that respondent was not "the purchaser, manufacturer, retailer or distributor" of the van. It was claimed in behalf of respondent that this provision reflected an error in the printing of the form. But reformation of the lease was not sought. The van was listed on respondent's inventory; respondent paid sales tax upon its purchase of the equipment and included an apportionment of sales tax in computing the monthly rental. The investment tax credit for the mobile van was passed to appellants by respondent.

Appellants ceased making payments, and complained to respondents concerning claimed malfunctioning of the equipment. Appellants surrendered the van to ESS, and informed respondent that no more payments would be made. Respondent informed appellants that it would attempt to sell the equipment if possible, and appellants agreed to this arrangement. After extensive advertising respondent resold the van to ESS for $4,000.

After trial the court rendered judgment for respondent in the amount of $9,449.40 (representing the unpaid balance of all payments under the lease) plus interest and attorneys fees as provided for by the lease.

■ Appellants contend that the lease was in reality a purchase money security interest and that respondent was required to give appellants written notice of the sale of the mobile van which was eventually effected. (Cal. U. Com. Code, § 9504, subd. (3) [amended by Stats. 1974, ch. 997, § 44, p. 2139, effective Jan. 1, 1976, to permit a written waiver of this right of notification].) It is the burden of the secured party who conducts the sale of the collateral to allege and prove such notification (*Barber* v. *LeRoy* (1974) 40 Cal.App.3d 336, 343-344 [115 Cal.Rptr. 272]); it is undisputed that such a written notice was never given to appellants by respondent prior to respondent's sale of the mobile van to ESS.

Thus the appeal turns on the question whether the trial court is to be upheld in its determination that the instrument was a true lease rather than a security interest. " 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. . . . Unless a lease or consignment is intended as security, reservation of title thereunder is not a 'security interest'. . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." (Cal. U. Com. Code, § 1201, subd. (37).)

■ Because the statute provides that the intention of the parties is "to be determined by the facts of each case," the factual determination of the trial court is to be upheld if supported by substantial evidence. But decisions in other jurisdictions, applying their counterparts of the above-quoted language of the Uniform Commercial Code, have evolved guidelines to aid the determination:

"1. The facts in each case control to show intention of the parties to create a security interest.

"2. Reservation of title in a lease or option to purchase appurtenant to or included in the lease does not in and of itself make the lease a security agreement.

"3. Lease agreement which permits the lessee to become the owner at the end of the term of the lease for a nominal or for no additional consideration is deemed intended as a security agreement as a matter of law.

"4. The percentage that option purchase price bears to the list price, especially if it is less than 25% is to be considered as showing the intent of the parties to make a lease as security.

"5. Where the terms of the lease and option to purchase are such that the only sensible course for the lessee at the end of the lease term is

to exercise the option and become the owner of the goods, the lease was intended to create a security interest.

"6. The character of a transaction as a true lease is indicated by:

(a) Provision specifying purchase option price which is approximately the market value at the time of the exercise of the option.

(b) Rental charges indicating an intention to compensate lessor for loss of value over the term of the lease due to aging, wear and obsolescence.

(c) Rentals which are not excessive and option purchase price which is not too low.

(d) Facts showing that the lessee is acquiring no equity in leased article during the term of lease." (*Crest Investment Trust, Inc.* v. *Atlantic Mobile Corp.* (1969) 252 Md. 286, 289 [250 A.2d 246, 248]; also see *Percival Const. Co.* v. *Miller & Miller Auctioneers, Inc.* (W.D.Okla. 1973) 387 F.Supp. 882, 885, affd. 532 F.2d 166, 171-172; *In re Herold Radio & Electronics Corp.* (2d Cir. 1964) 327 F.2d 564, 565-566; *In re Wheatland Electric Products Co.* (W.D.Pa. 1964) 237 F.Supp. 820, 822; *In re Crown Cartridge Corp.* (S.D.N.Y. 1962) 220 F.Supp. 914, 916.)

Although these guidelines cannot yield an assured result in a close case, they are useful aids to application of the statute. Here, the agreement provided that appellants could become the owners of the mobile van at the end of the term of the lease upon the payment of $1,040, i.e., 10 percent of the original cost. At the first private sale of the van by respondent to ESS, the van was sold for $4,000; ESS subsequently sold the van to a third party for $4,500. These prices were the only evidence of the fair market value at the time of default. There is some indication in the evidence that by the end of the term of the lease, the equipment would have depreciated to a much lower value. The indications are equivocal as to whether, within the meaning of the statute, the option price of $1,040 was "nominal." Therefore, the determination of the trial court is to be upheld, that the price was more than nominal and that the transaction was a true lease rather than a security device.

■ Appellants contend that there was a breach of warranty by both respondent and ESS. Insofar as appellants raise this contention against ESS, the point is not properly raised on appeal; appellants' notice of appeal indicated that the appeal was taken only against respondent, and not against ESS. Even if this appeal were properly taken against ESS, there is evidence that ESS repaired every maintenance problem that arose during appellant's possession and use of the mobile van, and that ESS even performed work beyond the warranty period. Moreover, the specific warranty provided by the manufacturer stated: "Damage resulting from neglect, abuse, or tampering voids this warranty." There was testimony that appellants made certain unauthorized changes in the equipment which did not conform to the equipment's proper use and maintenance, and that appellants failed to properly maintain the equipment. There was also testimony that the equipment was adequate to perform the work specified by appellants, i.e., cleaning exterior surfaces, including trucks. Thus, there was sufficient evidence to support the trial court's findings that the mobile wash van was capable of performing the ordinary and necessary functions for which it was designed, and that it was a merchantable product. The agreement between respondent and appellants expressly provided that respondent made no express or implied warranties concerning the equipment, and that appellants were receiving the equipment "as is." By contract, the parties may provide that there are no warranties as to the condition or merchantability of goods. (Cal. U. Com. Code, § 2316.) Thus, the parties' contract expressly precluded any liability of respondent arising out of unfitness of the mobile van. Moreover, there was evidence supporting the trial court's findings that the equipment was properly designed and merchantable to perform the functions for which it was intended. Therefore, the determination that there was no breach of warranty must be upheld.

Appellants contend that respondent was estopped by its conduct to recover the balance due under the lease. It is asserted that this estoppel arises out of the conduct of one Christopher Menkin, who was alleged by appellants to have been an agent of respondent; appellants claim that Menkin represented that respondent would abide by any decision made by appellants regarding the return of the mobile wash van. Appellants claim that they relied upon this statement in deciding to return the van to ESS. But the testimony upon which appellants rely was controverted by the testimony of Menkin that he had not made any such representation. Thus, there was evidence which supported the implied finding that there

was no conduct by which respondent was to be estopped from asserting its claims against appellants. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, pp. 4236-4238.)

■ Appellants contend that the trial court erred in its determination of damages by concluding that respondent was entitled to damages for the entire term of the "lease." The lease agreement provided that upon default respondent could cancel the agreement and recover from appellants the entire rental for the unexpired period of the agreement as liquidated damages. Such an acceleration clause, permitting a lessor to hold the lessee immediately liable for all rent, is invalid. (See *Puritan Leasing Co.* v. *August* (1976) 16 Cal.3d 451, 456 [128 Cal.Rptr. 175, 546 P.2d 679].) But there was also a provision in the lease authorizing the lessor to relet the equipment, "Lessee to remain liable for any deficiency." Appellant consented to the sale of the equipment to ESS. Credit was given for the amount received. Therefore, the balance reflected in the judgment represents actual damage and is not dependent on the invalid acceleration clause.

The trial court will hear and determine the application by respondents for attorneys fees on appeal. The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.