**In re Hugo VELASCO, M. D., Maria Teresa Velasco, Debtor.**

**Bankruptcy No. 38001998.**

United States Bankruptcy Court, W. D. Kentucky.

Sept. 2, 1981.

---

18. See Paragraph 3(c) of the Drake Agreements and Paragraph 3(c) and 3(d) of the M&M Agreement.

Richard D. Shapero, Joseph S. Elder, II, Louisville, Ky., for debtor.

Steven Lande, Los Angeles, Cal., C. Kinian Cosner, Jr., Nashville, Tenn., for Crocker National Bank of Los Angeles, Cal.

## ORDER

MERRITT S. DEITZ, Bankruptcy Judge.

Conflict of laws questions rarely appear in Bankruptcy Court, but in this case we are required to exercise a choice of law in interpreting a sale/leaseback agreement between a Kentucky debtor and a California lessor. Choice of law is the threshold question; the fundamental issue is whether or not the sale/leaseback arrangement is a true lease, or whether it is in fact a secured loan of a sort which would permit the "lessor" to execute its rights under the security agreement.

The facts of the case may be briefly stated. The debtor, Hugo Velasco, entered into a sale/leaseback agreement in March, 1979 with Hemple Leasing Corporation of Los Angeles, California, in order to finance medical and office equipment used by Velasco as a practicing physician.

Velasco had had previous dealings with Hemple, and in this long-distance transaction, Hemple purchased the equipment, without having seen it or obtained an appraisal of it, for $27,000. Of that amount, Velasco realized net proceeds of only $4,378, with the balance being applied to retire Velasco's debt on a previous sale/leaseback arrangement with Hemple. Under the terms of the agreement, Velasco transferred title to Hemple, leased the equipment back, and began to repay Hemple according to a monthly payment schedule. Velasco came into default six months thereafter.

According to Paragraph 25 of the lease agreement, the parties chose California law as the applicable state law for the document's interpretation and the legal enforcement of its provisions by the parties.

Dr. Velasco filed for relief under Chapter 13 of the Bankruptcy Code in September, 1980, and promptly thereafter, Crocker National Bank of Los Angeles objected to the treatment in the plan of the sale/leaseback agreement as an executory contract. Both the debtor and the trustee take the position that the lease is a "direct" lease and should be treated as an executory contract.

The legal issues presented have been copiously briefed by counsel for Crocker National Bank, in twenty-five pages of memoranda citing numerous cases. The debtor, on the other hand, has gifted us with only a

two-page memorandum. Not because of the length of the respective memoranda, but rather because we are firmly convinced of the legal position taken and articulately explained by Crocker, we hereby sustain the objection to the treatment of the sale/leaseback agreement as an executory contract. But in so holding, we consider it necessary to explain the reasons for the application of California rather than Kentucky law and its effect on this Chapter 13 plan.

■ In examining choice of law questions, a prudent court should first look for guidance to its immediate jurisdictional surroundings. Kentucky has adopted the Uniform Commercial Code which in Section 1–105(1) provides that:

> "when a transaction bears a *reasonable relation* to this state and also to another state or nation the parties *may agree* that the law either of this state *or of such other state* or nation shall govern their rights and duties".

Both state and federal courts in Kentucky have honored that provision, applying the law of other jurisdictions where contractually agreed to by the parties to a financial transaction. *Big Four Mills Ltd. v. Comm. Credit Co., Inc.*, 307 Ky. 612, 211 S.W.2d 831 (1948); *Consolidated Jewelers Inc. v. Standard Financial Corp.*, 325 F.2d 31 (6th Cir. 1963).

■ Following as we must the law of this circuit, we therefore should apply the law of California to the transaction in accordance with the intent of the parties, so long as the contract bears a "reasonable relation" to the state of California. That the reasonable relation test is met is clear from the fact that the contract *came into existence* in California upon its acceptance there by Hemple. Without that crucial act of acceptance having occurred in the state of California, there would have been no binding business relationship between these parties.

■ California law clearly regards sale/leaseback agreements as secured transactions in circumstances such as these.

Without belaboring the reader with an extensive list of case citations, the recent cases of *Komas v. Small Business Administration*, 71 Cal.App.3d 809, 139 Cal.Rptr. 669 (1977), and *Triple C Leasing, Inc. v. All-American Mobile Wash*, 64 Cal.App.3d 244, 134 Cal.Rptr. 328 (1976), appear to be directly on point. Additional authorities appear in Crocker's memoranda.

Although the sale/leaseback arrangement is a relatively modern and clever structure of financing for the tax benefit of the lessee, it may in circumstances such as these be, in the true commercial sense, a loan. That this was a loan, and a secured loan at that, and was so understood by the parties, is apparent from a review of the file. Dr. Velasco himself, in his initial letter of inquiry to Hemple, requested consideration of a "sale/leaseback type of loan" and throughout the letter referred to the proposed transaction as a loan. Further, paragraph 17 of the equipment lease agreement creates a security interest in the lessee's accounts receivable, existing and after-acquired, a badge of lending rather than leasing.

Applying California law, which characterizes this transaction as a loan rather than a lease, we hold, and it is HEREBY ORDERED that the objection of Crocker National Bank to the treatment of the Velasco-Hemple sale/leaseback agreement as an executory contract, is hereby SUSTAINED. This is a final order.