[Civ. No. 53677. First Dist., Div. Three. Nov. 23, 1983.]

INDUSTRIAL LEASING CORPORATION, Plaintiff and Respondent, v. EVERETT LAWSON, Defendant and Appellant.

COUNSEL

Gannon & Rosenberg and Steven G. Rosenberg for Defendant and Appellant.

Alvin G. Buchignani and Steven J. Riess for Plaintiff and Respondent.

OPINION

**SCOTT, J.**—This is an appeal of a judgment entered for respondent in an action for damages for breach of a lease of personal property. Appellant contends that (1) respondent is not entitled to a deficiency judgment after repossession and sale of the leased personal property, where the terms of the lease do not expressly provide for such a remedy, and (2) respondent is not entitled to further damages because he failed to act in a commercially reasonable manner in the sale of the leased personal property. We reject these contentions and affirm.

I

Respondent, Industrial Leasing Corporation, entered into a lease agreement with Vitamix, Inc., whereby certain office furnishings would be purchased by respondent for lease to Vitamix. The lease provided for a term of 60 months, with the property to be returned to respondent at the end of the term. Appellant, Everett Lawson, executed a written guarantee agreement at the time of the execution of the lease, whereby he became personally obligated for the lease agreement with Vitamix. At the time of the execution of this personal guarantee, appellant was an officer and member of the board of the lessee, but subsequently, and prior to the default, appellant resigned from the corporation.

After making nine installment payments under the lease, Vitamix failed to make further rental payments. Shortly thereafter, the company filed a petition for bankruptcy.

Subsequently, respondent regained possession of the leased equipment and undertook efforts to sell or release the equipment. Respondent placed advertisements in several local publications and wrote several letters of inquiry to prospective purchasers of the equipment. The equipment was ultimately sold in three private sales in the total amount of $4,193.70. Notification of the offer of sale of the leased property was provided to the com-

pany in connection with the first two private sales, but not in connection with the third sale. Appellant was not notified of the private sales.

The trial court entered judgment in favor of respondent in the amount of $13,703.54 plus attorney fees and costs of suit. In its findings of fact, the court determined that the private sales constituted a reasonable effort to minimize damages on the part of respondent.

## II

Appellant first contends that respondent is not entitled to a deficiency judgment after the repossession and sale of the leased equipment where the lease agreement does not expressly provide for such a remedy.[1] Appellant relies upon *Puritan Leasing Co.* v. *August* (1976) 16 Cal.3d 451 [128 Cal.Rptr. 175, 546 P.2d 679] for the proposition that a deficiency judgment will be permitted only where expressly provided for in the lease agreement. We are of the view that appellant misconstrues *Puritan Leasing.*

In *Puritan Leasing,* the plaintiff entered into a written lease agreement whereby he would purchase certain kitchen equipment from the vendor and lease it to defendant. A provision in the lease provided that upon lessee's default the lessor could repossess the equipment without termination of the lease and sell it and recover any deficiency in the rent reserved. When the defendant defaulted, plaintiff repossessed and sold the equipment and brought an action for the difference between the purchase price at the sale and the total unpaid rental for the remainder of the term of the lease. The Supreme Court held that the lessor would be entitled to the deficiency expressly provided for in the lease agreement where there was no policy consideration invalidating the remedy agreed to. (*Puritan Leasing Co.* v. *August, supra,* 16 Cal.3d at p. 458.)

The court further noted that "[t]raditionally, where a lessee abandons leased property, or otherwise indicates an intent wholly to repudiate a lease, the lessor may, *even in the absence of express agreement,* choose among

---

[1]The lease provision at issue states in relevant part: "Lessee agrees that should the lessee fail to pay any part of the rentals herein reserved, or any other sum required by lessee to be paid to the lessor within ten days after the due date thereof, or if default shall be made in any of the other covenants and conditions on the lessee's part herein contained, the lessor shall have the right to take possession of said personal property, without demand or notice, wherever said personal property may be located (damages occasioned by such taking of possession are hereby expressly waived by the lessee), and (1) sell said personal property or any portion thereof, and after deducting all costs and expenses in connection therewith, together with an amount equal to ten per cent (10%) of the actual cost to lessor of the equipment sold, to credit the net proceeds of such sale to the payment of the obligation of the lessee hereunder . . . ."

three courses of action: He may . . . (3) upon notice to lessee, re-enter or repossess the property, relet it for the lessee's account, and sue in damages to recover the excess of the total rent reserved over any amounts realized by the reletting." (*Id.,* at p. 457, italics added.) This rule, though traditionally applied to the lease of real property, was considered by the court to apply equally to leases of personalty. (*Id.,* at pp. 457-458.) The court also noted that, though the lessor traditionally was required to wait until the end of the term or until a particular installment accrued, no observable purpose existed for preventing the lessor from suing for the entire deficiency at the time of the disposition. (*Id.,* at pp. 462-463.)

Although the lease agreement expressly provided for repossession, resale and recovery of a deficiency, the *Puritan Leasing* court noted that this was not the only theory allowing for such a remedy: "Whether the theory of lessor's recovery is damages for breach of the lease on the one hand [the traditional remedy] . . . or simply that lessor is proceeding upon the lease under a right expressly accorded him therein, on the other, the result is the same." (*Id.,* at p. 460, italics omitted.)

Thus, in our view *Puritan Leasing* will allow for the recovery of the deficiency under either an express contractual provision or under the traditional principles governing breach of a lease.[2] Accordingly, we need not reach the question whether the language in the lease agreement expressly provided for the remedy of deficiency. We do note, however, that although the lease agreement did not employ the word deficiency, the clear meaning of the provision is for the lessor to apply the proceeds from the sale against the liabilities of the lessee arising from the breach of the lease. We conclude that the deficiency was properly awarded by the court.

### III

Appellant next contends that respondent is not entitled to further damages because he failed to act in a commercially reasonable manner in the sale of the leased equipment as required by divisions two and nine of the California Uniform Commercial Code. It is argued that respondent did not act in a commercially reasonable manner by failing to obtain the highest possible price for the repossessed property and by failing to provide reasonable notice of the private sales to appellant.

■ We cannot accept appellant's argument that the standard of commercially reasonable conduct in the sale of repossessed equipment in the

---

[2]We note that *Puritan Leasing* also disposes of appellant's citation of Civil Code section 3308 and *Automobile etc. Co.* v. *Salladay* (1921) 55 Cal.App. 219 [203 P. 163] for the proposition that a deficiency remedy must be expressly provided for by the language of the lease agreement. (See *Puritan Leasing Co.* v. *August, supra,* 16 Cal.3d at pp. 458, 460.)

California Uniform Commercial Code should apply equally to leases of personal property. The present lease is neither a security interest nor a contingent sale, and therefore, it is outside of the scope of the Commercial Code. Indeed, this is precisely the point argued by appellant earlier in his brief. We are of the view that the contract law principles of mitigation of damages apply to the instant matter.

The trial court in its findings of fact determined that the private sales conducted by respondent "constituted a reasonable effort on the part of plaintiff [respondent] to minimize its damages."

When considering an attack upon a finding of fact on the basis of insufficient evidence, the power of an appellate court begins and ends with a determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Kaichen* v. *Showers* (1956) 146 Cal.App.2d 804, 806 [304 P.2d 137].) In examining the evidence, "all conflicts must be resolved for the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict where possible. Also, when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Herman Christensen & Sons, Inc.* v. *Paris Plastering Co.* (1976) 61 Cal.App.3d 237, 253 [132 Cal.Rptr. 86].)

Applying this standard to the present matter, we conclude that there is substantial evidence in support of the court's finding of fact. We note that in connection with the private sales respondent placed advertisements in local publications and wrote several letters of inquiry to prospective purchasers. We also note that in connection with two of the private sales respondent provided the leasing company with notice of an offer for sale and invited a better offer. This is sufficient in our view to support the court's determination that respondent reasonably sought to minimize damages.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.