[Civ. No. 55303. Second Dist., Div. Four. May 16, 1980.]

In re the Marriage of SHEILA MAY and
PHILIP LAWRENCE COHEN.
PHILIP LAWRENCE COHEN, Respondent, v.
SHEILA MAY COHEN, Appellant.

## Counsel

Martin E. Shucart for Appellant.

Anslyene A. Abraham, Rodney Jones, Richard C. Solomon and Mark Burstein for Respondent.

## Opinion

**JEFFERSON (Bernard), J.***—This is a case in which petitioner Philip Cohen sought dissolution of his 12-year marriage to respondent Sheila Cohen. The trial court awarded an interlocutory judgment of dissolution to Philip. Sheila has appealed from certain provisions of that judgment; we affirm the judgment.

The case comes to us by means of a settled statement in lieu of a reporter's and clerk's transcripts. (Cal. Rules of Court, rule 7(b).) From that statement we summarize the pertinent facts.

### I

### *A Summary of the Facts*

Philip and Sheila married on October 4, 1964. Two children were born of the marriage: Scott, on January 26, 1967, and Craig, on July 9, 1969. Family support was provided by Philip, employed as a bus driver for the rapid transit district. The couple separated November 17, 1976. Philip's petition was heard on November 16, 1977.

At time of trial, Philip, aged 31, was employed as a salesman, grossing $500 per month. Sheila, aged 30, and the children, respectively 10 and 8 years of age, were receiving welfare support of $375 per month.

---

*Assigned by the Chairperson of the Judicial Council.

In addition, Sheila's mother had assisted with a substantial loan. Both children were requiring medical attention for heart problems; the extent of their disability, if any, is unknown.

The community indebtedness of the Cohens far exceeded community assets; the only asset listed by Philip was a 1968 Plymouth automobile which he valued at $50. Sheila, however, sought disposition of community furniture and furnishings, "petitioner's retirement rights" and "petitioner's social security benefits."

The parties stipulated at trial that, during the marriage, Philip had had certain sums withheld from his wages and paid to the federal government pursuant to the Federal Insurance Contributions Act (F.I.C.A.) which conceivably could, at some future time, entitle Philip to a variety of social security benefits.

It also developed at trial that, after the separation of the parties, Philip, listing $10,418 in indebtedness (a substantial portion of which was owed to Sheila's mother), had obtained a discharge in bankruptcy for himself only. In addition, during the separation, Philip left his employment as a bus driver and "cashed out" his pension rights, obtaining $550. He also sold some furniture for $470, obtained $56 from a bank account and cashed federal and state income tax refund checks totalling $300.

## II

### The Trial Court's Findings, Conclusions and Judgment

The trial court granted the dissolution; no spousal support was awarded Sheila, although the court expressly retained jurisdiction over this issue for six years. Custody of the minors was awarded to Sheila; Philip was ordered to pay child support of $150 per month through the office of the court trustee. He was also ordered to obtain medical insurance for the children, and to pay $200 in attorney's fees to Sheila's attorney in monthly installments of $50.

The trial court further determined that there were no community assets subject to disposition except for the Plymouth automobile which was valueless and awarded to Philip as his sole and separate property.

Pursuant to Code of Civil Procedure section 632 and rule 232(b) of the California Rules of Court, Sheila requested that the court make findings of fact and conclusions of law. The trial court made a finding that Philip's social security benefits were his separate property, declaring that "[t]o hold otherwise, the court finds, would frustrate the intent of the Federal Social Security Act and thus violate the supremacy clause of the United States Constitution."

The trial court declined to reassign to Philip his share of the community debts or to offset that share by ordering Philip to reimburse Sheila in full or in part, finding that such orders would, if made, "frustrate the intent and purpose of the Federal Bankruptcy Act and thus violate the supremacy clause of the U.S. Constitution."

The trial court also declined to take cognizance of Philip's acquisitions of claimed community assets during separation; these assets were determined to be not subject to disposition "in that such property was expended between the time of separation and trial on the petitioner's necessities of life...."

Sheila filed objections to the findings of fact and conclusions of law. The trial court rejected the objections, and this appeal from the judgment followed. The issues raised by Sheila below have been preserved for review here; the record on appeal has been properly prepared and is complete, pursuant to California Rules of Court, rule 7(b).

### III

### *Social Security Benefits*

There has been considerable litigation in recent years concerning the proper characterization of federally created retirement benefits by state family law courts. Two Court of Appeal opinions have analyzed the issue with respect to social security benefits, and have rejected the contention that such benefits constitute community assets subject to disposition by state courts at the time of dissolution. In *In re Marriage of Kelley* (1976) 64 Cal.App.3d 82, 96 [134 Cal.Rptr. 259], the court determined that the state power to dispose of such assets rested upon "(1) the characterization of the 'contributions' and benefits as akin to a community property right; and (2) the impact of the supremacy clause of

the United States Constitution. (Art. VI, cl. 2.)" The *Kelley* court analyzed the various Old Age, Survivor or Disability Insurance benefits, and concluded that, while some have similarity to private pensions, the statutory scheme designed by Congress is "one of social insurance designed to provide financial security to covered workers and their families rather than one of deferred compensation for past labor." (*Id.* at p. 98.) *Kelley* relied upon a similar characterization of social security benefits made in *Fleming* v. *Nestor* (1960) 363 U.S. 603 [4 L.Ed.2d 1435, 80 S.Ct. 1367], by the United States Supreme Court. The *Kelley* court declined to find that social security benefits were community assets, and noted that a state trial court's attempted evaluation and disposition of such benefits would conflict with federal law, disrupting a "uniform federal scheme of benefits" by producing results which would vary "depending upon the community property law of various states." (*Id.* at p. 99.)

A conclusion similar to that reached in *Kelley* was reached in *In re Marriage of Nizenkoff* (1976) 65 Cal.App.3d 136 [135 Cal.Rptr. 189]. The *Nizenkoff* court declared that the standard for determining whether a federal statute had created cognizable property interests divisible in state marital dissolution proceedings was ascertainment of congressional intent in enacting the particular federal statute in question; the court concluded that, with respect to social security benefits, Congress had expressly provided certain benefits (under certain circumstances) for divorced spouses, and thus did not intend "that they rely on state family law concepts of support, alimony and community property." (*Nizenkoff, supra*, 65 Cal.App.3d 136, 140.)

The *Nizenkoff* court also found it to be significant that Congress had retained the right to alter, amend or repeal any provision of the Social Security Act (42 U.S.C. § 1304); that there was a demonstrated congressional intention to preserve the federal character of the social security system in the face of "variations and idiosyncrasies of local law." (*Nizenkoff, supra*, 65 Cal.App.3d 136, 140.) Thus, social security benefits were found not subject to disposition as part of the community.

In 1977, however, the California Supreme Court decided *In re Marriage of Hisquierdo* (1977) 19 Cal.3d 613 [139 Cal.Rptr. 590, 566 P.2d 224]. The issue in that case was whether the benefits payable to a worker pursuant to the federal Railroad Retirement Act (45 U.S.C. § 231 et seq.) constituted assets subject to division as community prop-

erty upon dissolution of the worker's marriage. The *Hisquierdo* court noted that there had been a number of recent decisions of the court upholding the divisibility of federally created retirement benefits (e.g., *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449]) and rejected contentions made concerning congressional intent to preclude state division. It was concluded that the railroad retirement benefits involved were community assets subject to division under California's community property laws.

In 1979, however, the United States Supreme Court reversed this decision. (*Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802].) The majority of the court expressed the view that "[t]he pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." (*Id.* at p. 583 [59 L.Ed.2d at p. 12].)

Analyzing the Railroad Retirement Act, the United States Supreme Court emphasized the provisions of section 231m, which set forth sweeping protection of the benefits conferred by the act from attachment of any kind, demonstrating congressional intent to preclude claims based upon marital and family obligations as well as those of ordinary creditors. The high court noted that Congress could, if it so desired, provide suitable benefits or remedies for the families of retired railroad workers.[1]

The United States Supreme Court held that state jurisdiction exercised to identify, evaluate and divide railroad retirement benefits as community assets conflicted with the federal system as presently constituted, and would, if allowed, injure the objectives of the federal system.

Sheila contends here that certain language of the high court's *Hisquierdo* opinion suggests that benefits payable pursuant to the Social Security Act would be characterized differently by that court. But we do not agree with this contention. The Social Security Act also contains an antigarnishment section—section 407. The rationale supporting the

---

[1]Reference was made to recent congressional action in adding section 462 to the Social Security Act providing for garnishment of benefits to meet family *support* obligations under certain circumstances and to congressional amendment of the law pertaining to federal civil service retirement benefits allowing the assertion of community property claims.

federal *Hisquierdo* decision appears equally applicable to social security benefits such as those to which Philip may become entitled. ■ We therefore conclude that Philip's social security benefits were not an asset of the community, were not subject to division, and cannot be recognized by any alternative provision employing a setoff; and that, as the trial court found, to do otherwise would be contrary to current prevailing law.

## IV

### *The Bankruptcy*

■ Sheila further contends that the trial court erred when it refused to make any order taking into account Philip's pursuit of a discharge in bankruptcy with respect to his liability for community debts. We find it clear that the federal remedy of discharge in bankruptcy is exclusive in the sense that the federal statutory scheme precludes any type of state action which would interfere with its objectives.

The United States Constitution confers upon Congress "the paramount and exclusive" power to enact bankruptcy legislation (art. I, § 8, cl. 4). It was explained in *Internat. Shoe Co.* v. *Pinkus* (1928) 278 U.S. 261, 265 [73 L.Ed. 318, 320, 49 S.Ct. 108], that "[t]he power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount.... The purpose to exclude state action for the discharge of insolvent debtors may be manifested without specific declaration to that end; that which is clearly implied is of equal force as that which is expressed.... In respect of bankruptcies the intention of Congress is plain. The national purpose to establish uniformity necessarily excludes state regulation."

While the *Pinkus* case dealt with a state insolvency law, the general principle which emerged therefrom appears to be equally applicable to an exercise of state jurisdiction which would, either directly or indirectly, nullify the federal bankruptcy discharge of Philip by making him accountable to Sheila for either part or all of the community indebtedness. We agree with the trial court that any provision in the judgment requiring payment by Philip of these discharged obligations, whether to Sheila or others, would be contrary to the federal supremacy clause (art. VI, cl. 2) of the United States Constitution.

## V

### *The Effect of the Sale or Disposition of Community Property by One of the Parties After Separation*

It appears to be undisputed that, after the separation of the parties, Philip sold community furniture for $470 (despite Civ. Code, § 5125 which prohibits such conduct without the written consent of the other spouse), received $550 in lieu of pension benefits earned during marriage, cashed refund checks of $300, and obtained $56 from family bank accounts. These transactions netted Philip $1,376.

Sheila contends that Philip should have been required to account to the community for this sum; we agree and consider that he has done so.

The trial court found that these assets were not community in nature, and thus were not subject to the equal division of such assets mandated by Civil Code section 4800, subdivision (a), because the sums in question were expended between time of separation and trial on Philip's necessities of life.

■ There was evidence that, following separation, Philip lived with another woman who was not gainfully employed and who was supported by Philip. It is suggested that some of the proceeds Philip obtained from the sale of community property was used by Philip in supporting this woman. Such use of community property would constitute misappropriation under the provisions of Civil Code section 4800, subdivision (b)(2), permitting an off-set against the required equal division of community property. But the evidence also disclosed that Philip's financial statement demonstrates that Philip's income and living expenses were so modest that the sums acquired by him could all have in fact been expended for necessities of life.

The suggestion is advanced that, when dealing with small sums, such as are presented in the case before us, the trial courts should not be required to be meticulous in their determinations of the litigant's claims of offsets and equal division of community property. But principles of law remain the same whether the amounts involved are substantial or not. It is of paramount importance that the family law courts, like other trial courts, take the time and the trouble to carefully analyze and weigh the claims of the litigants.

Philip has cited to us no authority for the proposition that either spouse may unilaterally expend community funds, *after separation*, upon other than the necessities of life without being accountable to the other spouse. It is true that the separate property of a spouse is liable for the debts of the other spouse incurred for necessities of life, but only those incurred *while the parties are living together.* (See Civ. Code, § 5121, and *In re Marriage of Higgason* (1973) 10 Cal.3d 476 [110 Cal.Rptr. 897, 516 P.2d 289].) The same limitation holds true with respect to liability for support. (Civ. Code, § 5132.)

It was explained in *In re Marriage of Walter* (1976) 57 Cal.App.3d 802, 806-807 [129 Cal.Rptr. 351], that "[a]ppellant [husband] is correct in asserting that community property, with the exception of the wife's earnings, is liable for all debts of the husband, however and whenever contracted. [Citations.] But, the community is entitled to *reimbursement* if community funds are used to discharge the husband's separate indebtedness." (Italics in original.)

Since 1971, the Civil Code, in section 5118, has provided that the earnings and accumulations of each spouse after separation are the separate property of that spouse. This led the court in *In re Marriage of Hopkins* (1977) 74 Cal.App.3d 591 [141 Cal.Rptr. 597], to hold that there was no reason why debts incurred after separation and unrelated to the community should not also be the separate obligation of the spouse incurring them.

We are required, however, to accept the finding of the trial court that Philip did *not* expend, after separation, community proceeds on his *separate* obligations, since such finding is supported by conflicting evidence.

The judgment is affirmed. Appellant is to recover costs on appeal. After this opinion is final, the trial court may entertain any motion made by Sheila's counsel for an order directing Philip to contribute to reasonable attorney fees incurred by Sheila in undertaking this appeal.

Files, P. J., and Kingsley, J., concurred.

Petitions for a rehearing were denied May 22 and June 5, 1980, and the petitions of both parties for a hearing by the Supreme Court were denied July 16, 1980.