[Civ. No. 7116. Fifth Dist. June 29, 1984.]

In re the Marriage of DELILA LOUISE and HERBERT GARDNER WILLIAMS.
HERBERT GARDNER WILLIAMS, Respondent, v.
DELILA LOUISE WILLIAMS, Appellant.

## COUNSEL

Borton, Petrini & Conron and Douglas S. Moffat for Appellant.

Bultman & Kelly and M. G. Bultman for Respondent.

## OPINION

**HAMLIN, J.**—An interlocutory judgment dissolving the marriage of appellant Delila Louise Williams (wife) and respondent Herbert Gardner Williams (husband) was filed on June 5, 1978. As a part of the division of community property, that judgment ordered husband to pay to wife as long as they were both alive the sum of $81.49 per month in satisfaction of her share of husband's retirement income from the Kern County Fire Department. Husband made none of these monthly payments because wife failed to comply with her obligations under the dissolution decree. Wife applied for and received a writ of execution and levied on husband's savings account for the arrearages of $3,895 in the monthly payments due her. Husband filed a notice of motion to recall and quash execution and to vacate the levy of execution on his savings account.

Husband also filed an order to show cause re contempt against wife alleging she had failed to comply with the court's order that she deliver to him a promissory note for $3,048.99 to equalize division of the community property, the note to be secured by a first deed of trust on certain real property awarded to her under the dissolution decree. He also alleged wife had failed to deliver to him various items of personal property confirmed to him by the decree as his separate property.

Husband filed a declaration in support of his motion and stated that wife had discharged in bankruptcy the share of the community debts assigned to her as well as her community-property-equalizing obligation to him of $3,048.99. Husband sought the right to an offset against the arrearages in retirement income payments to wife of the amount of the $3,048.99 debt to him, as well as such community debts as wife had discharged in bankruptcy and for which he was being held separately liable by the creditors she had been ordered to pay.

Following the hearing on husband's motion, the trial court found that wife had committed fraud in the dissolution action and in the bankruptcy proceeding. The court granted husband the right to offset wife's indebtedness to him as well as any amounts he was required to pay creditors on indebtedness which wife had been ordered to pay. Based on the allowable setoff, the court granted husband's motion to recall and quash execution and to vacate the levy of execution. The court deferred a ruling on the order to show cause re contempt.[1] Wife appeals from the judgment on the motion.

---

[1] In connection with the contempt proceeding, the court stated in part, "The court feels, at this time, having bifurcated the hearing as to the contempt, that the court should not hear the contempt matter, because of evidence produced in this hearing, which could very well interfere with the court being fair and impartial so far as the contempt proceeding is con-

On appeal, wife urges that the trial court's order permitting husband to offset wife's indebtedness which had been discharged in bankruptcy frustrates the intent and purpose of the federal Bankruptcy Act and violates the federal supremacy clause of the United States Constitution. We agree.

FACTS

Incident to the parties' dissolution, the trial court found that they owned as community property an undivided two-thirds interest in a ranch co-owned with wife's grandmother. The court awarded each party one-half of this community interest. However, wife had reconveyed her one-third interest in the ranch to her grandmother before the dissolution decree was entered and failed to inform husband or the court of the reconveyance.

In order to equalize the division of community property and community debts, the court ordered wife to execute and deliver to husband her promissory note for $3,048.99, secured by a first deed of trust on her one-third interest in the ranch. Wife never complied with this order.

The court also awarded to husband as his separate property an antique stove and certain other personal property. Prior to entry of the decree, wife sold the stove for $300 and kept the proceeds of sale. Wife did not tell husband or the court of this sale. Husband was prevented from gaining possession of other personal property, which was in storage at the ranch, by the threat of wife's mother that he would be shot if he attempted to enter the ranch to recover this personal property. Additionally, wife continued to use certain personal furnishings awarded to husband under the dissolution decree in her own Bakersfield apartment.

The court determined that 36 percent of husband's right to receive retirement income from the Kern County Fire Department was community property. It awarded wife as her share of that retirement income the sum of $81.49 per month to be paid by husband as he received the retirement income beginning July 1, 1978, and continuing until the death of either husband or wife. Husband refused to comply with this order because of wife's failure to deliver to him the community-property-equalizing promissory note and the personal property awarded him by the dissolution decree.

Under the dissolution decree, husband was assigned responsibility for paying $9,426.37 of community debts, and wife was ordered to pay com-

---

cerned. [¶] So the court will reset that matter at counsel's convenience with the suggestion that counsel try to get the parties together and get the matter resolved. It would appear to the court that Mrs. Williams might be facing some jail time in this matter, and perhaps the lawyers can prevent that."

munity debts totaling $3,864.59. Wife filed her petition in bankruptcy and listed all of the creditors whom she was ordered to pay. Those debts were discharged in bankruptcy. Two of those creditors had already filed suit against husband, and one had secured a judgment, at the time husband filed his motion.

Husband had received notice that wife had filed a petition in bankruptcy and that wife had named him as a creditor. However, husband did not appear in the bankruptcy proceeding to object to wife's discharge or to attempt to offset in that proceeding the amount of wife's indebtedness to him against his indebtedness to her for the arrearages in retirement income payments. Husband turned over to his attorney the papers he received concerning wife's bankruptcy proceeding.

## DISCUSSION

*I. Did the trial court possess inherent power to order the offset in order to give effect to its judgment dividing the community property?*

■ Husband relies on Civil Code section 4380 and Code of Civil Procedure section 128 which generally provide that any court, including a family law court, has the inherent power to make all necessary orders to enforce or give effect to its judgments. However, notwithstanding husband's contentions in this regard, it is clear this power has always been limited by the powers specifically granted to the federal courts in adjudicating bankruptcies. The power to which husband refers is not a blanket grant, unbounded by constitutional or statutory law. Thus, in the instant case the power of the trial court to offset the amount of wife's indebtedness to husband under the dissolution decree against the arrearages in husband's monthly retirement payment to wife is necessarily limited by the power of the bankruptcy court to grant the discharge of wife's indebtedness in bankruptcy.

■ It is now firmly established in California law that certain types of debts arising from a division of community property on dissolution are properly dischargeable in bankruptcy. As the court stated in *Smalley* v. *Smalley* (1959) 176 Cal.App.2d 374 [1 Cal.Rptr. 440]: "[A]n alimony judgment or a judgment which can properly be construed as being for alimony is not affected by a discharge in bankruptcy. However, it has been squarely held in California that, where the parties have entered into a property settlement agreement whereby payments are thereafter to be made to the wife, not for support but in settlement of property rights, the discharge in bankruptcy of the husband discharges the debt." (*Id.*, at p. 375.) (See also *Yarus* v. *Yarus* (1960) 178 Cal.App.2d 190 [3 Cal.Rptr. 50]; *Myhers* v. *Myhers* (1970) 6 Cal.App.3d 855 [86 Cal.Rptr. 356]; Cal. Marital Termination Settlements

(Cont.Ed.Bar 1971) Division of Assets and Obligations, § 4.22b, p. 70; 2 Markey, Cal. Family Law, Practice and Procedure (1978-1979) §§ 26.54[1], p. 26-89, 26.150[2], p. 26-163, and 4 Markey, Cal. Family Law, Practice and Procedure (1978-1979) § 50.05[2], pp. 50-19—50-20.)

California's position in this area is consistent with federal law. In *Stout v. Prussel* (9th Cir. 1982) 691 F.2d 859, 860, the court stated in part, "Title 11 U.S.C. § 523(a)(5) provides that obligations to a spouse for alimony, maintenance, or support are not dischargeable in bankruptcy. However, under section 523(a)(5)(B), such debts are non-dischargeable in bankruptcy only if they are ·actually in the nature of alimony, maintenance, or support.'"

█ In the instant case, the $3,048.99 debt owing directly to husband which wife discharged in the bankruptcy proceeding was specified by the court to be a debt necessary "[i]n order to equalize the value of the community property and community debts as herein divided." Because this debt clearly arose out of the division of the community property unrelated to alimony, support, or maintenance, it was dischargeable in bankruptcy (subject to the limitations to be discussed below). Moreover, there is nothing in the record to suggest any impediment to wife's discharge of the community property debts to S. A. Camp and Wells Fargo which she had been ordered to pay, notwithstanding the right of those creditors to move against husband individually and hold him liable on the debts. (See, e.g., *In re Marriage of Clements* (1982) 134 Cal.App.3d 737, 743-744 [184 Cal.Rptr. 756]; *In re Marriage of Cohen* (1980) 105 Cal.App.3d 836 [164 Cal.Rptr. 672].) Despite the obvious inequities of permitting one spouse who has assumed a share of the community property debts incident to a dissolution to subsequently discharge those debts and leave the nonbankrupt spouse liable, in apparent derogation of the otherwise equal division of community property, the practice is well recognized and not one easily circumvented by the trial courts. (See, e.g., *In re Marriage of Cohen, supra,* at p. 843.)

The major problem in the instant case, and one which this court cannot resolve, is that the issues should have been presented to and handled by the bankruptcy court while wife's proceeding was pending. As stated above, husband testified that, upon receiving notification of wife's bankruptcy proceeding as a named creditor, he turned the papers over to his attorney, the same attorney who is representing him on this appeal, and husband had no further knowledge about what transpired. It seems evident that the attorney did not pursue husband's rights in the bankruptcy court. The bankruptcy court has exclusive jurisdiction to determine the dischargeability of debts. As the court stated in *In re Houtman* (9th Cir. 1978) 568 F.2d 651, "The 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy

courts the exclusive jurisdiction to determine dischargeability. As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act." (*Id.*, at p. 653.) Following the 1978 revisions of the Bankruptcy Act, the sections referred to by the court in *Houtman* were renumbered and are now found at section 523.

That a creditor seeking to prevent the discharge of a debt must appear in the bankruptcy proceeding in order to effectuate the exclusive jurisdiction of the bankruptcy court is made clear in 2 Collier, Collier Bankruptcy Manual (3d ed. 1979) Creditors, the Debtor, and the Estate, paragraph 523.12[1], pages 523-34—523-35. "Section 523(c) and (d) provide the debtor with certain protections if a creditor seeks to have a debt excepted from discharge under subsection (a)(2), (4), or (6). These subsections except from discharge debts that were incurred because of fraud, embezzlement, larceny, false pretenses, willful or malicious injury to another entity, or serious misbehavior. Subsection (c) requires that a creditor who is owed a debt that may be excepted from discharge for any of these reasons initiate proceedings in the bankruptcy court for a determination as to whether these debts will be excepted from discharge. Any debt listed in section 523(a)(2), (4), or (6) will be discharged unless the court, after notice and a hearing, determines that the debt is to be excepted from discharge. *The creditor must request that this determination be made. If he fails to act, the debt will be discharged.*" (Italics added.)

In this case, the trial court at the hearing on husband's motion to quash the execution specifically found that wife was guilty of fraud both on the trial court in the dissolution action and on the bankruptcy court. At the time of the interlocutory judgment, incorporating the property settlement agreed to by the parties, wife had already disposed of real property and personal property which the trial court later determined to be community property. Wife did not disclose to the trial court at the time the court approved the property settlement that she no longer held title to her portion of the real property nor that she had sold certain of the personal property which the court then awarded to husband as his sole and separate property. Moreover, it is clear from a review of wife's bankruptcy petition that she did not list as an asset of hers either the amount of retirement payment arrearages due her at the time the petition was filed, approximately $2,600 according to our calculations, or her monthly entitlement to a payment of $81.49 from husband. This is arguably within the area of concealment of assets contemplated by 11 United States Code section 727 which may justify a denial of discharge by the bankruptcy court. Since husband failed to raise either of these issues to prevent the discharge of the debt owing to him and/or debts

to other creditors, the bankruptcy court discharged the debts as it is required to do by the mandatory language of the statutes in question.

Equally important with respect to husband's position in the instant case are the provisions of the Bankruptcy Act which govern the offset of mutual debts. Husband argued at the hearing for an "equitable" offset against the amount of arrearages in retirement payments he owed to wife of both the community-property-equalizing debt wife owed to him and the amounts he had been or would be required to pay creditors, based on debts which had been assigned to wife in the dissolution proceeding but discharged by her in her bankruptcy proceeding. The concept of equitable setoff is well established in California law. As Witkin states: "Where the defendant's claim did not arise out of the transaction, recoupment was unavailable, and the defendant at first had to bring an independent action. Then in equity, and later at law by statute, the right of *setoff* was established, under which the defendant was allowed to set off liquidated claims existing at the commencement of the action, where certain equitable circumstances warranted it, e.g., where there were mutual credits, or where the plaintiff was insolvent." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 976, p. 2553; see also Code Civ. Proc., § 431.70; *Grossman* v. *Lippson* (1978) 81 Cal.App.3d 554, 562 [146 Cal.Rptr. 741]; 5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, § 212, p. 3565.)

In support of his argument for an equitable setoff in the trial court, husband relied upon 11 United States Code Annotated section 68, now section 553, which provides in pertinent part: "(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

"(1) The claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title; . . ." Additional limitations in that section are not necessary to an analysis of this case. (See generally, 2 Collier, Collier Bankruptcy Manual, *supra,* Creditors, the Debtor, and the Estate, ch. 553, p. 553-1 and following.) The language in that section concerning the disallowance of a creditor's claim, a determination within the jurisdiction of the bankruptcy court, clearly indicates that the setoff provisions of United States Code section 553 are applicable only in the bankruptcy court. Any doubt about this reasoning is eliminated by 11 United States Code section 524. That section provides: "(a) A discharge in a case under this title—

"(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under Section 727, 944, 1141, or 1328 of this title, whether or not discharge of such debt is waived;

"(2) operates as an injunction against commencement or continuation of an action, the employment of process, or any act to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived; . . ."

Read together, 11 United States Code sections 524 and 553 make it clear that offset cannot be used to revive in a state court proceeding a debt already discharged in bankruptcy. (See also 2 Collier, Collier Bankruptcy Manual, *supra,* Creditors, the Debtor and the Estate, [¶] 524.02, pp. 524-3—524-7.) We therefore conclude the trial court erred in ordering the offset and in granting husband's motion to recall and quash the execution and to vacate the levy of execution.

II. *Could the trial court modify the property settlement agreement to take into consideration the effect of wife's discharge of certain debts in bankruptcy?*

█ Both husband and wife in the instant case have cited two recent cases which deal with the effect of one spouse's discharge in bankruptcy of community debts assigned to that spouse incident to a division of the community property.

The first is *In re Marriage of Cohen, supra,* 105 Cal.App.3d 836. There, husband had discharged approximately $10,000 in community debts which had been assigned to him incident to the community property settlement agreement. Because the discharge had occurred prior to the time of filing the final judgment, the wife sought to have the husband's share of community debts reassigned to him or to offset that share by ordering husband to reimburse wife in full or in part for the amount of the debts. The trial court refused to grant the wife's request, "finding that such orders would, if made, 'frustrate the intent and purpose of the Federal Bankruptcy Act and thus violate the supremacy clause of the U.S. Constitution.'" (*Id.,* at p. 840.)

Similarly, in the second case cited, *In re Marriage of Clements, supra,* 134 Cal.App.3d 737, the court was faced with a wife who had discharged community debts totaling approximately $13,000. After the wife's subsequent receipt of $6,000 from the sale of a community asset, the trial court, on the husband's motion, attempted to order the wife to partially satisfy the

obligations from the receipt of these funds. The wife obtained an ex parte order from the bankruptcy court dissolving the trial court's restraining order imposed on the funds and promptly spent them. Moreover, on husband's request, the trial court had ordered that he be permitted to reduce the amount of spousal support payable to wife from $1,000 per month to $747 in order to offset payments he was then required to make, having been held individually liable on the community debts which wife had discharged in bankruptcy. The court recognized that it was faced with "two competing policy considerations. Through discharge, the bankruptcy court attempts to provide 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' [Citation omitted.] On the other hand, the family law court has a strong interest in requiring the bankrupt to fulfill obligations that are an indivisible part of the equal division of community property." (*In re Marriage of Clements, supra,* at pp. 743-744.)

Recognizing that the decision in *In re Marriage of Cohen, supra,* 105 Cal.App.3d 836 was probably dispositive against husband with respect to the trial court's attempt to compel wife to satisfy debts previously discharged in bankruptcy from a subsequent receipt of funds incident solely to the *property* settlement, i.e., the $6,000, the *Clements* court did not find a similar infirmity in the trial court's modification of the spousal support order. Specifically, the court stated: "Proper grounds may always be presented for the purpose of modifying or revoking an award of spousal support. (Civ. Code, § 4801, subd. (a).) But the applicant must show the economic situation of the parties has changed since it is the economic relation which is to be affected by the proposed modification. [Citations omitted.] In the instant case, the material change in the economic status of the parties was that the spouse to whom the support had been awarded had significantly reduced her indebtedness through bankruptcy which concomitantly increased the obligations to be met by the nonbankrupt spouse. The fact that a spouse has incurred indebtedness may indicate such a change in his ability to pay support as to authorize a reduction in the amount of support payments. [Citations omitted.]" (*In re Marriage of Clements, supra,* 134 Cal.App.3d at pp. 745-756.)

Husband relies upon the rationale of *Clements* to justify the trial court's ruling that wife's community-property-equalizing debt and the debts assigned to wife which he had to pay could be offset against his periodic payments of retirement benefits to wife, notwithstanding the discharge of wife's indebtedness in her bankruptcy. Wife counters, arguing that *Clements* is limited to modifications of support orders and is inapplicable to modification of the court-approved property settlement, notwithstanding that the

division of property is made by way of periodic payments. We agree that husband's reliance is misplaced.

■ Civil Code section 4812 was amended in 1977 to provide: "In the event obligations *for property settlement* to a spouse or support of a spouse are discharged in bankruptcy, the court may make all proper orders for the support of such spouse, as the court may deem just, having regard for the circumstances of the respective parties and the amount of any obligations *under a property settlement agreement which are discharged.*" (Italics added.) (See also 6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, § 207, p. 5077; *id.* (1982 supp.) § 207, p. 562; *Review of Selected 1977 California Legislation* (1978) 9 Pacific L.J. at p. 496.)

A review of the legislative history of the 1977 amendment to Civil Code section 4812 reveals that it was designed specifically to redress the type of inequity which arose in this case when one spouse, having accepted assignment of certain of the community debts, subsequently discharges those debts in bankruptcy and leaves the other spouse exposed to individual liability in derogation of an equal division of the community property. The Legislative Counsel's Digest of Assembly Bill No. 1269 (1976-1978 Reg. Sess.) incorporated the bill analysis worksheet furnished to the Assembly Committee on Judiciary on proposed amendments to several sections of the Civil Code concerning family law, including proposed amendment to Civil Code section 4812. This worksheet stated in part: "[r]evision of section 4812, providing for support of a spouse in the event of bankruptcy, will close a loophole in the law: now, a spouse may have a legal obligation to share community property but may discharge that obligation in bankruptcy court. Current law provides that in the event support obligations are discharged in bankruptcy, the court may take that discharge in to [*sic*] account in awarding future support. The bill directs the court to also consider discharge of a property settlement when determining support." The enrolled bill report provided by the Legal Affairs Department of the Governor's Office, dated August 11, 1977, states in part with respect to Assembly Bill No. 1269, "Bankruptcy is substantially regulated by federal law. *This provision is as close to reinstating debts owed to spouses as federal law will permit.* Public policy should encourage payment of debts and support obligations between spouses which arise from the disposition of community property pursuant to a dissolution." (Italics added.)

Thus it is clear that the Legislature, in amending Civil Code section 4812, intended to redress the inequities which could result from a discharge in bankruptcy of community debts assigned to one spouse *to the extent it was possible to do so* within the limitations imposed by the supremacy of the bankruptcy law. It is possible to readjust the relative position of the spouses

by a modification of a spousal support order, taking into consideration the amount of property obligations discharged by one spouse in bankruptcy. There is nothing in the provisions of Civil Code section 4812 nor in the legislative history behind it to suggest that the Legislature intended to or believed it could go beyond the scope of that law to reach and modify final property settlements, notwithstanding the inequities which result from discharges in bankruptcy of the type here in question.

 It is clear from a review of the provisions of the dissolution decree in this case that the periodic payment of $81.49 due to wife was not for her alimony, maintenance or support or in the nature of such an award. The dissolution decree specifically provides that the spousal support previously ordered by the court should terminate at the end of January 1978; it also provides that husband, to whom the custody of the children was awarded, along with the right to their Social Security benefits payable to the minors because of the death of their natural mother, would pay to wife a proportion of those Social Security benefits during the time the children were with her. With respect to husband's fire department retirement, the court's decree makes it clear that 36 percent of the retirement fund was determined to be community property, of which wife's share is one-half. Periodic payments of the wife's share as the husband draws his retirement is a common manner of making a division of such a community property asset. The mere fact that the payments are made periodically does not convert the property division into a provision for alimony, support, or maintenance, which could then be modified under the rationale of *In re Marriage of Clements, supra,* 134 Cal.App.3d 737.

We therefore conclude that in the present posture of this case the trial court cannot offset its determination of a community debt owed by wife to husband against periodic payments due wife in satisfaction of her community interest in husband's retirement income. The rationale of *Clements* and the statutory authorization to make an adjustment in spousal support is limited to a situation in which a spousal support order is incorporated in the judgment of dissolution subject to modification by the court. This is not such a case, and the trial court exceeded its jurisdiction by ordering an offset which, in effect, modified a property settlement without the consent of the parties.

III. *Is wife barred from seeking a writ of execution on the arrearages because she is in contempt of court?*

 Husband asserts that wife cannot execute under the dissolution decree because she is in contempt of court for willfully violating that decree. Husband relies on Code of Civil Procedure section 1218. However, the trial

court specifically refused to adjudicate wife's potential contempt following the hearing on husband's motion to vacate and quash the execution. Based upon its finding that wife had committed fraud in both the dissolution and in the bankruptcy proceeding, the court was understandably concerned that it could not be fair and impartial in adjudicating the contempt.

There is nothing further in the record before this court to indicate that wife has ever been adjudicated in contempt of court, notwithstanding the trial court's finding of fraud. Thus we conclude that the provisions of Code of Civil Procedure section 1218 are irrelevant.

Judgment is reversed.

Woolpert, Acting P. J., and Martin, J., concurred.