123 Cal.Rptr.2d 611 (2002)
101 Cal.App.4th 120
In re the MARRIAGE OF James LYNN, Jr., and Patricia Lynn.
James Lynn, Jr., Appellant,
v.
Patricia Shirey, Respondent.
No. F038161.
Court of Appeal, Fifth District.
August 13, 2002.
*613 Paul N. Dane, Martinez, for Appellant.
No appearance for Respondent.

*612 OPINION
BUCKLEY, Acting P.J.
James Lynn, Jr., appeals from an order directing him to pay spousal support and attorney fees to his ex-wife, Patricia (Lynn) Shirey.[1] The amount of the support order is identical to the amount of a property settlement James was ordered to pay Patricia upon their divorce in 1994. However, this property settlement obligation was subsequently discharged in James's bankruptcy in 1999. Therefore he contends the support order has, in effect, improperly reinstated the discharged property settlement under the guise of spousal support. While we will conclude the court properly could have considered the discharged debt in reassessing James's support obligation, we will reverse the support order because the court failed to also consider the other statutory factors governing its decision.

FACTUAL AND PROCEDURAL BACKGROUND
James and Patricia married in 1971 and separated over 20 years later in 1992. James petitioned for dissolution, and a judgment was entered later that year as to marital status only. The court reserved ruling on the issues of child support, spousal support, and the distribution of community assets and liabilities.
The court considered the matter of child support in October of 1994. At that time, the couple still had two minor children: a 15-year-old son (Jason) living with James, and an 11-year-old son (Justin) living with Patricia. James was earning $2,594 per month working as a driver in the waste disposal business; Patricia was receiving *614 unemployment benefits of $771 per month while enrolled in a nursing program. Based on these figures, the court ordered James to pay child support to Patricia for Justin, plus arrearages. The court reserved the issue of spousal support.
The court issued another order the following month in regard to the distribution of the marital property. The net effect of the order was to require James to make a property settlement or "equalizing payment" to Patricia in the amount of $25,820.78. The court made no spousal support order.
James did not make the payment. Instead, in January of 1999, he filed a voluntary petition for bankruptcy under chapter 13 of the Bankruptcy Act. He listed among his outstanding debts the unpaid property settlement due Patricia, which, with the addition of interest, had grown to $36,664. This debt was eventually discharged in the bankruptcy.
On October 23, 2000, Patricia filed a motion for modification of spousal support asking the court to order James to pay her the original amount of the discharged property settlement ($25,820.78) in the form of support, at the rate of $1,500 per month. She based the motion on section 3592 of the Family Code.[2] She also requested James be ordered to pay her $2,500 for her attorney fees. James filed a declaration in opposition to the motion claiming, in general, that the 1994 property settlement order had been inequitable.
By this point, Patricia was earning $1,400 per month as a registered nurse, and had monthly expenses, according to her declaration, of $2,250. Justin, who was then 17 years old, was living with his father. James was earning about $4,150 per month as a waste disposal driver, and reported his expenses were $3,363 per month.
At a hearing on December 19, 2000, the court ordered the parties to submit their arguments in writing. In his written opposition, James argued once again that the 1994 property settlement had been inequitable because many of the assumptions upon which it was based turned out to be incorrect. He also noted briefly that section 3592 applies only to the discharge in bankruptcy of obligations under settlement agreements. Patricia, in her written arguments in support of the motion, conceded this last point, but maintained she was entitled to the same amount of support, $1,500 per month, based on the factors set out in section 4320 for determining spousal support.
On March 14, 2001, the court issued the following written order:
"Pursuant to Family Code § 3592, [James] pay [Patricia] the amount of $25,821.00 as and for spousal support, at the rate of $1500.00 per month, commencing April 1, 2001 and on or before the 1st of each month until paid in full. The Court further orders, [James] pay $2,000.00 as and for attorney fees, at the rate of $250 per month, commencing April 1, 2001 and on or before the 1st of each month until paid in full. If any one payment is more than 10 days late then the entire amount will become due and payable and interest will accrue at the legal rate."
Notice of entry of the order was filed five days later on March 19.
Also on March 19, Patricia obtained an order assigning $1,500 of James's wages to her every month. On April 4, James filed an ex parte application to stay the wage assignment order. He maintained the sum of the spousal support and attorney fee *615 orders, when added to his monthly mortgage payment ($1,200) and his obligation to the bankruptcy trustee ($400), would exceed his take-home pay without regard to any of his other living expenses. A hearing on the application for stay was set for May 31, 2001.
On May 15, 2001, James filed a timely notice of appeal from the court's spousal support order. There is nothing in the record explaining what happened at the May 31 hearing.

DISCUSSION[3]
Property settlement payments ordered in dissolution proceedings to effect the equitable division of community property, as opposed to payments for spousal or child support, are dischargeable in bankruptcy. (In re Siragusa (9th Cir. 1994) 27 F.3d 406, 407 (Siragusa); 11 U.S.C. §§ 523(a)(5), 727.)
"It is now firmly established in California law that certain types of debts arising from a division of community property on dissolution are properly dischargeable in bankruptcy.... `[A]n alimony judgment or a judgment which can properly be construed as being for alimony is not affected by a discharge in bankruptcy. However, it has been squarely held in California that, where the parties have entered into a property settlement agreement whereby payments are thereafter to be made to the wife, not for support but in settlement of property rights, the discharge in bankruptcy of the husband discharges the debt.' [Citations.]" (In re Marriage of Williams (1984) 157 Cal.App.3d 1215, 1220-1221, 203 Cal.Rptr. 909 (Williams); see generally Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2002) ¶¶ 18:70-18:96, pp. 18-20 to 18-41 (rev. # 1 2000).)
Further, the discharge of a debt in bankruptcy operates as an injunction prohibiting a creditor thereafter from taking any action to collect or recover the debt. (Siragusa, supra, 27 F.3d at p. 407; Williams, supra, 157 Cal.App.3d at p. 1224, 203 Cal.Rptr. 909; 11 U.S.C. § 524.) Thus, for example, the court in a dissolution action may not revive the wife's discharged property settlement debt by using it as an offset against the husband's periodic payment of retirement benefits to her. (Williams, supra, 157 Cal.App.3d at pp. 1225, 1227, 203 Cal.Rptr. 909.)
However, the court may consider the discharge in bankruptcy of one spouse's property settlement debt as a factor in determining whether to modify that spouse's support obligation. (Siragusa, supra, 27 F.3d at p. 408.) In Siragusa, the husband and wife in a divorce action brought in Nevada agreed to a division of their marital property that required the husband to pay the wife $1.25 million in monthly installments to buy her share of a community medical practice. This obligation was reduced to a judgment after the husband defaulted on the payments. The husband filed for bankruptcy before the wife could enforce the judgment, and his property settlement obligation was eventually discharged. But the husband's obligation to pay spousal support was not discharged. Shortly before the final support payment was due, the wife filed a motion in the divorce court to modify, i.e., to increase and extend, the payments on the ground the discharge of the husband's property settlement debt amounted to a "changed circumstance." The state court granted the wife's motion, and the husband appealed. (Id. at p. 407.)
*616 The husband also filed a complaint in bankruptcy court claiming the modification violated the standing injunction in title 11 United States Code section 524 prohibiting the collection of debts that had been discharged in bankruptcy. The bankruptcy court dismissed the complaint based on comity. The district court affirmed the dismissal, as did the appellate court.
The question then before the court was whether the support modification request was indeed an attempt to collect a discharged debt in violation of the federal bankruptcy law (a question that arguably would have been within the exclusive jurisdiction of the bankruptcy court to decide). The court held it was not.
"Nothing in the record suggests that the divorce court was attempting to reinstate the property settlement debt; the amount awarded in alimony is not a substitute for the amount of the discharged property settlement. The alimony modification merely takes into account the fact that Ms. Siragusa would no longer receive the property settlement payments upon which the original alimony was premised. The discharge altered both Ms. Siragusa's need and Dr. Siragusa's ability to pay." (Siragusa, supra, 27 F.3d at p. 408.)
Williams, supra, 157 Cal.App.3d 1215, 203 Cal.Rptr. 909, a decision by this court, involved a similar sort of situation, and the application of Civil Code section 4812, the predecessor to section 3592. The husband and wife in Williams entered into a property settlement agreement[4] that required the wife to pay the husband $3,048.99 to equalize the division of community property; to pay $3,864.59 in community debts; and to turn over the husband's separate property to him. The husband, for his part, was required to pay the wife a portion of his monthly retirement income, and to pay $9,426.37 in community debts. The wife failed to comply with any of her obligations before filing for bankruptcy. The bankruptcy discharged her property settlement obligation, as well as her share of the community debts (which then fell to the husband to pay). In the meantime, the husband had refused to pay over any part of his retirement income to the wife. She obtained a writ of execution and levied against the husband's savings account to recover the arrearages. He moved to vacate the levy on the ground he was entitled to offset his arrearages against her now-discharged obligations to him (the property settlement payment and her share of community debts). The trial court granted the husband's motion, and the wife appealed. (Id. at p. 1218, 203 Cal.Rptr. 909.)
We held, in reliance on Civil Code former section 4812,[5] that the husband could not offset the wife's discharged property settlement debt to him against his obligation to pay the wife a portion of his retirement income (which also was a form *617 of community property, not spousal support). After reviewing the legislative history of the 1977 amendment to Civil Code section 4812, we said:
"Thus it is clear that the Legislature, in amending Civil Code section 4812, intended to redress the inequities which could result from a discharge in bankruptcy of community debts assigned to one spouse to the extent it was possible to do so within the limitations imposed by the supremacy of the bankruptcy law. It is possible to readjust the relative position of the spouses by a modification of a spousal support order, taking into consideration the amount of property obligations discharged by one spouse in bankruptcy. There is nothing in the provisions of Civil Code section 4812 nor in the legislative history behind it to suggest that the Legislature intended to or believed it could go beyond the scope of that law to reach and modify final property settlements, notwithstanding the inequities which result from discharges in bankruptcy of the type here in question.
"...................
"We therefore conclude that in the present posture of this case the trial court cannot offset its determination of a community debt owed by wife to husband against periodic payments due wife in satisfaction of her community interest in husband's retirement income. The ... statutory authorization to make an adjustment in spousal support is limited to a situation in which a spousal support order is incorporated in the judgment of dissolution subject to modification by the court. This is not such a case, and the trial court exceeded its jurisdiction by ordering an offset which, in effect, modified a property settlement without the consent of the parties." (Williams, supra, 157 Cal.App.3d at pp. 1226-1227, 203 Cal.Rptr. 909. See also In re Marriage of Cohen (1980) 105 Cal.App.3d 836, 843, 164 Cal.Rptr. 672 [use of husband's discharged community debts to offset wife's corresponding obligation would violate federal bankruptcy law].)
In In re Marriage of Clements (1982) 134 Cal.App.3d 737, 184 Cal.Rptr. 756 (Clements), by comparison, the judgment of dissolution did incorporate a spousal support order. The husband's support obligation in that case took into account the division of community debts between him and his ex-wife. However, the wife's share of the debts was later discharged in bankruptcy, and her creditors looked to the husband for payment. Then, when a community asset was sold, the husband asked the court to order the wife to use her share of the proceeds to pay her discharged debts. The family law court granted the request and issued a temporary restraining order enjoining the wife from spending the money in any other way. A few days later, the bankruptcy court dissolved the restraining order, and the wife spent the money for other things.
The family law court's order also included a provision permitting the husband to offset any amount he spent to pay the wife's former debts against the amount he paid her for support. The wife appealed from this part of the order. The appellate court upheld it. It explained:
"It is evident that the debts assigned to [wife] and the agreement to hold [husband] harmless on these obligations were in settlement of property rights and were effectively discharged by her bankruptcy. At issue is whether this discharge prevents the state court from decreasing [wife's] spousal support payment to compensate [husband] for assuming responsibility for these discharged obligations.
"..................

*618 "There are many factors deemed pertinent by the State of California in establishing an adequate amount of spousal support. Indeed, a court can consider everything having a legitimate bearing on present and prospective matters relating to the lives of both parties. [Citations.] Some of the circumstances that are applicable to the case at bar are the needs of the parties, the liabilities of the parties to meet such needs, property owned, obligations to be met, as well as the ability to earn and actual earnings. [Citations.]
"Proper grounds may always be presented for the purpose of modifying or revoking an award of spousal support. [Citation.] But the applicant must show the economic situation of the parties has changed since it is the economic relation which is to be affected by the proposed modification. [Citations.] In the instant case, the material change in the economic status of the parties was that the spouse to whom the support had been awarded had significantly reduced her indebtedness through bankruptcy which concomitantly increased the obligations to be met by the nonbankrupt spouse. The fact that a spouse has incurred indebtedness may indicate such a change in his ability to pay support as to authorize a reduction in the amount of support payments. [Citations.]" (Clements, supra, 134 Cal.App.3d at pp. 743-746, [184 Cal.Rptr. 756].)
Notably, the court in Clements made no mention of Civil Code former section 4812. One possible explanation for this omission is that the statute permitted the court, in deciding whether to modify a spousal support order, to consider the discharge of one spouse's obligations under a settlement agreement. Nothing in Clements indicates the judgment of dissolution in that case incorporated a marital settlement agreement (MSA) between the parties.
This same language referring to a settlement agreement was carried over into section 3592. Civil Code section 4812 was repealed, and section 3592 was enacted in its place, in 1992. (Stats.1992, ch. 162, § 3, p. 464 and § 10, pp. 464, 564, operative Jan. 1,1994.) Section 3592 provides:
"If an obligation under an agreement for settlement of property to a spouse or for support of a spouse is discharged in bankruptcy, the court may make all proper orders for the support of the spouse, as the court determines are just, having regard for the circumstances of the parties and the amount of the obligations under the agreement that are discharged."[6] (Italics added.)
Section 3592 appears in division 9 of the Family Code (Support), part 1 (General Provisions), chapter 3 (Support Agreements), article 3 (Spousal Support). Although the Family Code does not expressly define MSA's, several of its provisions contemplate their existence, including section 3592. (Hogoboom & King, Cal. Practice Guide: Family Law, supra, ¶ 9-4, pp. 9-1 to 9-2.) An MSA commonly provides, among other things, for a division of community assets and debts, and for child and spousal support. (Id. ¶ 19-310, pp. 9-67 to 9-68.) It usually is then "merged" into the judgment of dissolution, *619 whereupon it ceases to have any independent legal significance; the parties' rights and obligations are governed by the judgment alone. (Id. ¶ 9:443, p. 9-98.2.)
A party to an MSA may waive the right to receive spousal support.
"[There is no public policy] prohibition against a waiver of post-dissolution spousal support. If the spouses separate by agreement, neither owes the other a duty of support unless they otherwise agree [Fam.Code, § 4302]; and any right to support after dissolution exists, if at all, only under the terms of the judgment. Thus, a voluntary, knowing and intelligent waiver of support in a marital settlement agreement will be enforced according to its terms. [Citations.]" (Hogoboom & King, Cal. Practice Guide: Family Law, supra, ¶ 9:337, p. 9-76.)
And, while a spousal support provision in a settlement agreement is ordinarily subject to modification or termination by the court, it is not if the agreement specifically so states. (§ 3591.) Thus, it appears section 3592 is intended to protect a spouse from the harsh consequences of a bargain whose basic assumptions about the allocation of community property have been altered significantly by the bankruptcy of the other spouse. There is, in other words, a reason to treat spousal support in the event of a bankruptcy differently when it is based on a settlement agreement than when it is not.[7] We conclude, therefore, that section 3592 means what it says and so applies only in the former situation. Since there was no settlement agreement in this case, the statute does not apply here.
This is not to say the court must disregard the discharge in bankruptcy of James's property settlement debt to Patricia in determining his obligation to pay spousal support. However, this is only one of many factors. Section 4320, as it read at the time of the support hearing, stated in full:
"In ordering spousal support under this part, the court shall consider all of the following circumstances:
"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:
"(l) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.
"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.
"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

*620 "(c) The ability to pay of the supporting party, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.
"(d) The needs of each party based on the standard of living established during the marriage.
"(e) The obligations and assets, including the separate property, of each party.
"(f) The duration of the marriage.
"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.
"(h) The age and health of the parties, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party where the court finds documented evidence of a history of domestic violence, as defined in Section 6211, against the supported party by the supporting party.
"(i) The immediate and specific tax consequences to each party.
"(j) The balance of the hardships to each party.
"(k) The goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration as described in Section 4336, a `reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties.

"(I) Any other factors the court determines are just and equitable." (Stats.1999, ch. 846, § 1.5, pp. 4826-4827.)
Here, the trial court reached its decision based not on section 4320 but on section 3592, which provides only that "the court may make all proper orders for the support of the spouse, as the court determines are just, having regard for the circumstances of the parties and the amount of the obligations under the agreement that are discharged." We cannot say in this situation that "the circumstances of the parties" encompassed all the factors set out in section 4320, or that the court necessarily considered them.[8]
"Spousal support is governed by statute. (See §§ 4300-4360.) In ordering spousal support, the trial court must consider and weigh all of the circumstances enumerated in the statute, to the extent they are relevant to the case before it....
"`In making its spousal support order, the trial court possesses broad discretion so as to fairly exercise the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it.' [Citation.] In balancing the applicable statutory factors, the trial court has discretion to determine the appropriate weight to accord to each. [Citation.] But the `court may not be arbitrary; it must exercise its discretion along legal lines, taking into consideration the applicable circumstances of the parties set forth in [the statute], especially reasonable needs and their financial abilities.' [Citation.] Furthermore, *621 the court does not have discretion to ignore any relevant circumstance enumerated in the statute. To the contrary, the trial judge must both recognize and apply each applicable statutory factor in setting spousal support. [Citations.] Failure to do so is reversible error. [Citations.]" (In re Marriage of Cheriton, supra, 92 Cal.App.4th at pp. 302-304, 111 Cal.Rptr.2d 755, fn. omitted.)
It appears the court simply accepted Patricia's figure of $1,500 per month for spousal support, which she requested (under section 3592) without any explanation of how she arrived at this amount. In her subsequent written pleadings in support of the request, she conceded section 3592 did not apply in this case but she attempted to justify the figure nonetheless, based on some of the factors listed in section 4320.
The critical factor here seems to be James's ability to pay such a large amount since, if his income and expense declaration is correct, he would be left without any money to pay his basic living expenses. In her pleadings, Patricia argues for example, that James's income is sufficient when combined with that of his present wife. That, however, is not a factor the court may consider. (§ 4323, subd. (b); In re Marriage of Serna (2000) 85 Cal.App.4th 482, 487, 102 Cal.Rptr.2d 188.) Moreover, according to her income and expense declaration, two of Patricia's adult children live with her but neither has any income. However, the court may not award support for an adult child under the guise of spousal support. (Serna, supra, 85 Cal.App.4th at pp. 487-489, 102 Cal. Rptr.2d 188.)
These are only two examples. We cannot determine from the record whether the court considered additional factors it should not have, and/or failed to consider some others it was required to take into account under section 4320. For instance, we note that James, according to his income and expense declaration, was paying or was obligated to pay $400 per month to the bankruptcy trustee against a debt with a balance (in November of 2000) of $7,000. However, the record does not disclose whether, as seems possible, some part of this payment was meant to be applied toward James's remaining property settlement obligation after bankruptcy. Therefore, we conclude the court abused its discretion in ordering James to pay spousal support in the amount of $1,500 per month.
We reach the same conclusion with regard to the court's order directing James to pay Patricia's attorney fees. "[T]rial courts enjoy broad discretion in awarding attorneys' fees in marital proceedings. [Citation.] The exercise of that discretion is guided by statute." (In re Marriage of Cheriton, supra, 92 Cal. App.4th at p. 314, 111 Cal.Rptr.2d 755.) As relevant here, section 2032 provides:
"(a) The court may make an award of attorney's fees and costs under Section 2030 or 2031 where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties.
"(b) In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320..."
Here again, it appears the court failed to consider the appropriate statutory factors in determining the amount James should be required to pay each month (although it reduced the total from $2,500 to $2,000). "`It is well established in California *622 that, although the trial court has considerable discretion in fashioning a need-based fee award [citation], the record must reflect that the trial court actually exercised that discretion, and considered the statutory factors in exercising that discretion.' [Citation.]" (In re Marriage of Cheriton, supra, 92 Cal.App.4th at p. 315, 111 Cal.Rptr.2d 755, italics added.) For the reasons we have explained, the record in the present case does not leave us any room to conclude the court exercised its discretion as the law requires.

DISPOSITION
The judgment is reversed and the matter remanded to allow the trial court to consider all statutory factors under sections 4320 and 2032, stating on the record the bases for its decision.[9] Costs are awarded to appellant.
WE CONCUR: CORNELL and GOMES, JJ.
NOTES
[1] We refer to the parties by their given names for the sake of clarity only; we intend no disrespect. (In re Marriage of Cheriton (2001) 92 Cal.App.4th 269, 280, fn. 1, 111 Cal. Rptr.2d 755.)
[2] Unless noted otherwise, all further statutory citations refer to the Family Code.
[3] Patricia has not filed a respondent's brief.
[4] Although the decision generally refers to the trial court's orders with respect to the division of property, it also says at one point: "At the time of the interlocutory judgment, incorporating the property settlement agreed to by the parties, wife had already...." (Williams, supra, 157 Cal.App.3d at p. 1222, 203 Cal. Rptr. 909, italics added.)
[5] Civil Code former section 4812 then provided:

"In the event obligations for [property settlement to a spouse or] support of a spouse are discharged in bankruptcy, the court may make all proper orders for the support of such spouse, as the court may deem just, having regard for the circumstances of the respective parties [and the amount of any obligations under a property settlement agreement which are discharged]." [Stats.1977, ch. 332, § 2, p. 1287. Brackets identify language added by 1977 amendment.] Cf. Stats. 1969, ch. 1608, § 8, p. 3337.
[6] We note too that both former Civil Code section 4812 and former section 3592 appear by their terms to apply only in the situation where a property settlement obligation of the supporting spouse has been discharged in bankruptcy (which was not the situation in either Williams or Clements, but was the case in Siragusa). (But see Hogoboom & King, Cal. Practice Guide: Family Law, supra, ¶ 16:998-6:998.3, pp. 6-358.1 to 6-358.2 and ¶ 17:228-17:229, pp. 17-57 to 17-58.) For reasons that will appear, we do not consider this question.
[7] On the other hand, MSA's may not abridge the parents' mutual statutory child support obligations or impinge on the court's jurisdiction to award child support. (Hogoboom & King, Cal. Practice Guide: Family Law, supra, ¶¶ 9:17 to 9:19, pp. 9-5 to 9-6.) It seems to follow that section 4013, the child support equivalent of section 3592, makes no mention of property settlement agreements. "If obligations for support of a child are discharged in bankruptcy, the court may make all proper orders for the support of the child that the court determines are just." (§ 4013.)
[8] We reach no conclusion about what factors are or ought to be included in "the circumstances of the parties" when section 3592 does apply.
[9] James may not, of course, relitigate the court's determination in 1994 that he owed Patricia $25,820.78 to equalize the division of community property. But what is at issue here is not the amount of that obligation but the effect of its discharge in bankruptcy on his duty to pay spousal support. We do not believe the principle of res judicata precludes the court from considering subsequent events affecting the property division in deciding what would be a "just and equitable" amount of spousal support. (§ 4320, subd. (l).)