Filed 10/27/14  Marriage of Taylor CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re Marriage of STEVEN L. and GINA TAYLOR. | B253616 |
| | (Los Angeles County Super. Ct. No. SD023272) |
| STEVEN L. TAYLOR, Respondent, v. GINA TAYLOR, Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David J. Cowan and Matthew C. St. George, Temporary Judges.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

L. Walker Van Antwerp III for Appellant.

Marcia J. Brewer for Respondent.

_____

# INTRODUCTION

Gina Taylor (Wife) appeals from a judgment setting forth the trial court's rulings on certain matters relating to the dissolution of her marriage with Steven L. Taylor (Husband). Finding no reversible error, we affirm.

# PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The parties were married June or July 14, 1991.[1] They separated September 19, 2005. On September 29, 2005, Husband filed a petition for dissolution of marriage from Wife. He sought joint custody of their daughter, and requested that Wife pay him spousal support and pay his attorney fees and costs. He also requested a statement of decision regarding termination of the court's ability to award spousal support to Wife, and a determination of the community property. Concurrently, Husband filed a community and quasi-community property declaration, listing three real estate properties: a house in West Hills, California, which he valued at $550,000; a condominium in Santa Monica, California, which he valued at $450,000; and a house in Peru, which he valued at $60,000. Husband also listed a 2004 Volkswagen Jetta, valued at $22,000; a Toyota truck, valued at $1,000; and a life insurance policy with a cash value of $12,000.

On October 27, 2006, Wife filed a response. She requested legal and physical custody of their daughter with reasonable visitation rights for Husband. She also sought spousal support, termination of the court's ability to award spousal support to Husband, and a determination of the community's property. Wife did not provide a declaration of the community and quasi-community property.

---

[1] According to Husband, they were married July 14, 1991. According to Wife, they were married June 14.

2

On August 21, 2006, Husband obtained a temporary restraining order against Wife. On November 13, 2006, the court denied Husband's request for a restraining order without prejudice, finding that "the issues that gave rise to the issuance of the temporary restraining [order] have been resolved."

On June 8, 2007, Wife filed an application for an order requiring Husband to show cause (OSC) why she should not be entitled to spousal support in the amount of $3,000 per month from Husband, and attorney fees in the amount of $5,000. In support of the OSC, Wife stated that until April 9, 2007, she lived in the West Hills residence and Husband was paying the mortgage on the residence. However, she was no longer living there and had to pay rent for her current residence. Wife stated that she needed spousal support to maintain the standard of living established during the marriage and to pay the substantial debt she had to service. She further stated that during their marriage, she lived in the Santa Monica condominium. The family would go out to eat about three times a week to good restaurants. Additionally, she and their daughter would vacation two months a year in Peru. Wife stated that her earnings as a homecare companion would not allow her to enjoy the same standard of living and to pay her attorney fees.

Wife also filed an income and expense declaration, stating that she worked 30 hours per week at $10 per hour. Wife had $648 in cash or checking accounts, and estimated that her real property was worth $589, net of debts. She stated her monthly rent was $575, monthly debt service was $1,580, and all other monthly expenses totaled $753. Of the $2,908 total monthly expenses, $1,800 was being paid by "others." She listed six credit cards with a total balance of $47,196.62. Wife also stated that to date, she had paid her attorney $5,000, charged to a credit card. She also had $3,205 in medical bills and an outstanding $5,000 loan. Wife

3

attached two paystub printouts showing her employment income for March 10 through March 14 (five days), which totaled $550 gross.

On June 28, 2007, Husband filed a response. In an attached declaration, Husband stated that Wife did not live at the West Hills residence until April 2007. Rather, she lived at the residence of the person for whom she provided homecare approximately three to five days a week. He was unsure where she lived the remainder of the week, but speculated that she was living with her boyfriend Juan Cabrera or her brother Julio. Husband acknowledged that during the marriage, the family lived at the Santa Monica condominium. However, Wife had recently "signed the house over" to Cabrera. Husband stated that he cooked approximately 90 percent of the meals, and the family would occasionally go to El Pollo Loco or Pizza Hut restaurants. They went to more expensive restaurants only for birthdays or other special occasions. Husband acknowledged that Wife and their daughter vacationed in Peru, but asserted that the vacations were cost-effective as they owned a house in Lima, Peru. Moreover, much of the time was spent visiting family in Peru. According to Husband, he had been financially responsible for all community property debt during their marriage, and had been paying the mortgage and property taxes since the date of separation. Husband further stated that he had been paying rent from when Wife "denied" him and their daughter access to the West Hills residence. Finally, Husband stated that their daughter lived with him 100 percent of the time, and that he bore sole responsibility for her education, extracurricular activities and everyday expenses.

Following a bench trial on October 24, 2012, the trial court issued the following rulings in a "Judgment on Reserved Issues." The court awarded no permanent spousal support to either party, finding that maintaining the parties' standard of living was not feasible due to the substantial drop in Husband's

4

income. However, it retained jurisdiction to award spousal support to either party in the future. The court also ordered Husband to pay $300 per month in arrearages on previously ordered spousal support. Husband was awarded the West Hills house, including any encumbrances thereon, and Wife was awarded the Santa Monica condominium and the Peru house. Husband was awarded the ING retirement account cashout and the cashout on a life insurance policy, but he was obligated to pay Wife half of the ING cashout and half of the insurance policy cashout. Wife was awarded the Jetta, and the oral transcript of the court's ruling indicates that the Toyota truck also was awarded to Wife. The court ordered Husband to reimburse Wife $750 for her share of premarriage tax debt incurred by Husband. Finally, the court ordered that each party pay its own credit card debts and attorney fees.

Wife filed a timely notice of appeal from the judgment.

## DISCUSSION

On appeal, Wife challenges eight separate rulings of the superior court. "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) To overcome this presumption, an appellant must provide an adequate record that demonstrates error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) Moreover, appellant forfeits any contention not supported by argument or citation to authority. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-770.) Finally, "the finding of the trier of fact that property is separate or community, if based upon substantial evidence, even though there be evidence in conflict therewith, or if based upon evidence from which

5

conflicting inferences may be drawn, is binding and conclusive upon an appellate court." (*Estate of Baer* (1947) 81 Cal.App.2d 830, 833.) We apply this standard of review to the challenged rulings.

### A. *Line of Equity*

Wife contends the trial court should have ordered Husband to "compensate" her for drawing over $90,000 on a line of credit secured by the West Hills residence. Wife appears to be seeking half of the $90,000, as she argues the line of credit was secured by a community asset. Wife's contention would have merit were she responsible for repaying the cash drawn on the line of equity. However, the record demonstrates that Wife was under no such obligation. The West Hills residence was awarded to Husband, and Husband agreed to pay any encumbrances thereon. At trial, Wife's counsel conceded there was no equity in the West Hills residence, and evidence was submitted that Wife had transferred any interest she had in the West Hills residence to her boyfriend Cabrera. On this record, there was no error in the trial court's ruling.

### B. *Life Insurance Policy*

Wife contends that the trial court should have ordered Husband to pay her half of the surrender value on a second life insurance policy. At trial, the parties agreed that Husband had a second insurance policy which, in 2004, had a cash surrender value of $8,636.58. The evidence was inconclusive as to when the policy was surrendered and how the proceeds from the surrender were used. The court orally ruled that "if the policy was cashed out post date of separation, [Husband] is ordered to reimburse [Wife] one half of it. If it was cashed [out] predate of separation, there's no order for reimbursement." The written judgment made no mention of the second policy. On appeal, Wife claims that in the face of "proof" that the policy was cashed out postseparation, the court was compelled to

6

include an order directing husband to make an equalization payment on the second policy.

We disagree. Wife's argument is predicated on the assertion that the trial record contained uncontradicted evidence that the policy was surrendered postseparation. The record, however, demonstrates that the evidence was in conflict. The court was thus under no obligation to find Wife entitled to an equalization payment. To the extent Wife now complains that the written order did not mention the second policy, we note that she failed to object to the proposed statement of decision. (*In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134 [failure to object and seek correction in statement of decision waives challenge to lack of specificity in decision].) Finally, the record reflects the court was prepared to order an equalization payment in the face of proof that the policy had been surrendered postseparation. Absent such evidence, the court was under no obligation to order such a payment in its written judgment.

C.     *Community Debt*

Wife contends Husband also should have been ordered to pay half of her credit card debt, which she asserted totaled $17,000 at the time of separation. At trial, Wife produced a credit card statement showing a $2,900 balance at the time of separation. As to the remaining credit card statements, Wife's counsel stated that while Wife could "see them on the computer . . . [, she] has not been able to print them out." Husband's counsel made an offer of proof that Husband had substantial credit card debt at the time of separation, which greatly exceeded $2,900. Husband's counsel acknowledged that Husband had discharged the debt in a subsequent bankruptcy. Although both parties had stated they were ready to proceed on the issue of credit card debts, neither side had evidence of its total credit card debt at the time of separation. Both parties submitted the issue for the

7

court's final resolution, and the court ordered each party to pay its own credit card debt.

"[C]ommunity property assets and community property debts must be divided equally when the community assets exceed the community obligations." (*In re Marriage of Marx* (1979) 97 Cal.App.3d 552, 557.)  Moreover, the fact that Husband had discharged his credit card debt in bankruptcy does not alter the amount of community property debt that must be divided between the parties, as both parties were able to file for bankruptcy.  (See *In re Marriage of Cohen* (1980) 105 Cal.App.3d 836, 843 [no error in not taking into account Husband's pursuit of a discharge in bankruptcy with respect to his liability for community debts]; cf. *In re Marriage of Williams* (1984) 157 Cal.App.3d 1215, 1221 ["Despite the obvious inequities of permitting one spouse who has assumed a share of the community property debts incident to a dissolution to subsequently discharge those debts and leave the nonbankrupt spouse liable, in apparent derogation of the otherwise equal division of community property, the practice is well recognized and not one easily circumvented by the trial courts."].)  Wife has not demonstrated that the court's ruling on the community's credit card debt was erroneous.  It was undisputed that both parties had credit card debt at the time of separation; the amount was uncertain, but both parties agreed to submit the issue to the court for final resolution.  On this record, no error in the court's ruling has been shown.

D.    *Property Transferred into Joint Bank Account*

Wife contends she is entitled to the entirety of a September 16, 2005 deposit of $19,965 from Peru into the community's bank account, as she contends the deposit consisted entirely of her separate property.  Although Husband's community property declaration listed a Peru house as community property, at trial, Wife's counsel made an offer of proof that the house was transferred into

8

Wife's name as a gift by her brother during the marriage. According to Wife's counsel, Wife then took out a loan on the property to purchase a golf course property. The golf course property was sold, and the proceeds were wired into the joint bank account. Eventually, the joint account was emptied, but Husband testified he made no large withdrawals from the account shortly before they separated. He also denied withdrawing money from the joint account to pay his divorce attorney, explaining that he retained his attorney with funds drawn on the line of equity. Based on the evidence presented, the court determined that Wife had not overcome the presumption that the deposit was community property and that it was withdrawn for community use. The court denied reimbursement.

On appeal, Wife contends the only possible inference from the evidence is that Husband used the $19,965 deposit to pay his attorney to file the divorce petition. We disagree. No documentary evidence was produced showing that Husband withdrew money from the joint account. Husband denied withdrawing money from the account to pay his divorce attorney, and the trial court was entitled to credit his testimony. Accordingly, Wife has failed to demonstrate the trial court erred in denying reimbursement for the $19,965 deposit.

E.      *Tax Debt*

Wife contends the court erred in determining that she should be reimbursed only $750 for community funds used to pay Husband's $18,703 separate tax debt. Evidence presented at trial showed the Internal Revenue Service (IRS) had a $33,751 tax lien for taxes due in 1988 (prior to the marriage), as well as in 1992 and 1996 (during the marriage). The specific amount due on the 1988 taxes was $18,703. Husband's counsel stated that to pay the tax debt, the IRS levied on a whole life insurance policy that was originally Husband's separate property. Husband testified he entered into a compromise with the IRS to pay off "all of the

9

tax obligations" for "around $3,000 something." Husband further testified the levy reduced the cash value of the whole life insurance policy to zero. He had used community income to make payments on the life insurance policy. The court found that the levy was for both separate tax debt and community tax debt, and that half of the tax debt was not community debt. It ordered Husband to reimburse Wife $750 for her community share of the property used to pay Husband's separate tax obligation.

On this record, we find no error in the court's order. Although Wife now contends the offer in compromise was made after the levy, Husband's trial testimony supported the court's conclusion that the levy resulted from the offer in compromise, that the levy was for both separate and community debt, and that the levy was in the amount of $3,000. Likewise, substantial evidence supported the court's finding that half of the tax debt was community debt. As the parties were married in 1991, $15,048 was community debt and $18,703 was Husband's separate tax debt. Based on the ratio of community debt to separate debt, approximately half of the $3,000 levy, or $1,500, was Husband's separate tax debt. Thus, the court properly found that Wife should be reimbursed $750 for her share of community property used to pay the separate tax debt. That was the trial court's ruling.

F.    *Medical Bills*

At trial, Wife requested reimbursement for her medical bills, allegedly incurred as a result of Husband's violence against her after their separation. She produced no evidence that Husband had been charged or convicted of domestic abuse. Neither did she produce evidence -- such as a police report -- showing that the medical bills were for injuries sustained during a domestic abuse incident. Husband's counsel argued that the matter was a civil issue between the parties.

10

The court declined to award Wife reimbursement, finding no outstanding restraining order obligated Husband to pay Wife's medical costs. The court also noted that Wife could seek restitution in criminal court.

On appeal, Wife contends she was entitled to reimbursement for her medical bills as special damages under Civil Code section 1708.6. That section sets forth the elements of the tort of domestic violence, and provides that damages for the tort include special damages. While we agree that medical expenses incurred as a result of domestic violence are recoverable pursuant to Civil Code section 1708.6, nothing in the record compelled the trial court to find Husband responsible for Wife's injuries. Indeed, when ruling on spousal support, the court expressly found that Husband had no history or pattern of domestic violence. Also, we note that the only restraining order in the record was granted in favor of Husband and against Wife. In short, Wife has failed to show the court erred in denying her reimbursement for her medical bills.

G. *Permanent Spousal Support*

Although both parties requested spousal support, the testimony and argument at trial was focused solely on Wife's request. Wife argued the family enjoyed a "middle-class lifestyle in [a] single-family residence" during the marriage. Wife was making $10 per hour as a home caregiver. As detailed previously, Wife submitted a declaration showing $2,908 in monthly expenses, of which $1,800 was being paid by "others." Husband testified that he was currently doing market research making approximately $2,700 per month gross. His monthly expenses were approximately $4,500. However, Husband was not paying his mortgage, as he was working with his lender to modify his payments.

11

As required by law, the trial court made findings on the factors enumerated in Family Code section 4320, which governs the award of spousal support.[2] The trial court found that the marriage was a long-term marriage, that the parties had lived a middle-class lifestyle during the marriage, that there was no evidence that Wife had helped Husband acquire skills or receive an education, that their child was an adult, that there was no documented evidence of domestic violence, that Husband had no ability to pay from his present income or assets, that the parties had comparable obligations, that the parties' respective incomes were comparable, and that Wife had become self-supporting. After balancing these factors, the court held that no permanent spousal support would be awarded to either party. The court stated that it could not award spousal support, as Husband lacked a present ability to pay such support. The court further ruled it would retain jurisdiction to award spousal support in the future.

On appeal, Wife contends she was entitled to permanent spousal support, specifically challenging the court's finding at the hearing that the parties had comparable incomes. The trial court has broad discretion over spousal support, and its exercise of discretion will not be disturbed on appeal unless, as a matter of law, an abuse of discretion is shown. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 479.)

We agree the parties' gross incomes were not comparable, but there was substantial evidence in the record that their net incomes were comparable. Husband's monthly expenses of approximately $4,500 exceeded his monthly gross income by approximately $1,800. Even reducing his monthly expenses by the approximately $2,000 monthly mortgage payment he was not paying, his expenses left him with approximately $200 in monthly income. Once Husband resumed

---

[2]     All further citations are to the Family Code, unless otherwise stated.

12

paying mortgage or rent, he would have a negative net income. Wife's monthly income was approximately $1,764, and her monthly expenses were approximately $1,108, leaving her with $652. Should the $1,800 in financial assistance being paid by others cease, she too would have a negative net income. On this record, the trial court was entitled to find that the parties had comparable net incomes. After considering the trial court's findings on all of the other section 4320 factors, we find no abuse of discretion in the court's determination to award no spousal support.

Wife contends that Husband could earn more than $2,700 per month, as he earned $7,200 per month in 2010. (See *In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1637-1638 [ability to pay of the supporting spouse determined by earning capacity, earned and unearned income, assets, and standard of living].) Wife produced no evidence that Husband could have earned more money. She argued that he was working only 15 hours per week based upon Husband's full-time income in 2010, but at trial, produced no documentary evidence about his work hours. Nor did she provide evidence of Husband's present potential earning capacity. On this record, the court was not compelled to find Husband could earn enough to provide spousal support. To the extent Wife acquires evidence of a future change in Husband's earning capacity, she is free to seek spousal support, as the trial court retained jurisdiction to award such support.

Wife also contends that she is entitled to spousal support to recreate the middle-class lifestyle she enjoyed during the marriage. She ignores the court's express finding that "maintaining the standard of living of the parties is not feasible . . . ." Moreover, there is no requirement that spousal support must meet the needs of the supported spouse as measured by the marital standard of living. (*In re Marriage of Smith*, *supra*, 225 Cal.App.3d at p. 488 ["The Legislature has never

13

specified that spousal support must always meet the needs of the supported spouse as measured by the marital standard of living. Indeed, it would be unwise to do so. In most instances, it is impossible at separation for either party to have sufficient funds to continue to live in the same life-style enjoyed during the marriage."].) As neither party was in a position to sustain the standard of living each had enjoyed during the marriage, the court was not required to order spousal support designed to return Wife to that standard.

H. *Attorney Fees*

Wife requested $5,000 for attorney fees. The court ordered each party to pay its own attorney fees. On appeal, Wife contends she should have been awarded attorney fees, based on her inability to pay for a middle-class lifestyle. Although Wife cites no legal authority, we consider her argument in light of sections 2030 through 2034, which control the award of attorney fees during the pendency of a divorce petition. Section 2032 provides that the trial court may make an award of attorney fees, but the court must consider the factors listed in section 4320 to determine whether to make such award. As the preceding analysis in Part G. demonstrates, when the section 4320 factors are considered, Husband did not have the ability to pay Wife's attorney fees, and no other equitable factors compelled such an award. Accordingly, we find no abuse of discretion in the court's order that each party pay its own attorney fees.

I. *Motion for Sanctions*

Husband seeks attorney fees and costs as sanctions for Wife's filing of this appeal, contending that the appeal is frivolous. Although we ruled against Wife on each of her claims, we do not find that the appeal is "totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Accordingly, we decline to award Husband attorney fees.

14

## DISPOSITION

The judgment is affirmed.  Respondent Husband is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**


                                        MANELLA, J.


We concur:



EPSTEIN, P. J.



WILLHITE, J.